STOCKER v TRI-MOUNT/BAY HARBOR BUILDING
COMPANY, INC

Docket No. 261575. Submitted September 8, 2005, at Grand Rapids.
Decided September 20, 2005, at 9:00 a.m.

Dave Stocker brought an action in the Emmet Circuit Court against
Tri-Mount/Bay Harbor Building Company, Inc., to foreclose his
construction lien against other companies and individuals, includ-
ing the Carpenters Pension Trust Fund-Detroit and Vicinity
(Carpenters), which held a mortgage lien on the property on which
Stocker performed construction. The court, Charles W. Johnson,
J., ruled that Carpenters' mortgage, filed before any construction
began, was superior to all other liens later recorded on the real
property, including a construction lien held by Flotation Docking
Systems, Inc. (FDS), and granted partial summary disposition for
Carpenters. FDS appealed, claiming that a construction lien takes
priority over a purchase money mortgage where the lien is on an
improvement that can be easily removed without damaging the
land.

The Court of Appeals *held*:

The purpose of the Construction Lien Act, MCL 570.1101 *et
seq.*, is to protect the interests of contractors, workers, and
suppliers through construction liens. MCL 570.1119(4) provides
that a mortgage recorded before the first physical improvement is
started has priority over construction liens. However MCL
570.1107(3) ensures the existence of lower priority liens after an
owner has lost his or her interests to the holder of a higher priority
lien. That a lien shall not be defeated under that subsection means
that it shall continue to exist, not that it is given a higher priority.
The statutes are not in conflict. Carpenters' purchase money
mortgage has top priority, but the construction lien of FDS
continues to exist. Ranking the mortgage above the construction
lien does not destroy that lien.

Affirmed.

LIENS — CONSTRUCTION LIEN ACT — PRIORITY — PURCHASE MONEY MORTGAGE.

A purchase money mortgage ranks higher in priority than a con-
struction lien for construction commenced after the recording of

the mortgage; the higher priority of the mortgage does not destroy the construction lien (MCL 570.1107[3], 570.1119[4]).

*John F. Rohe* for Flotation Docking Systems, Inc.

*Schafer & Weiner, PLLC* (by *Arnold Schafer, Joseph K. Grekin,* and *Michael R. Wernette*), for the Carpenter Pension Trust Fund-Detroit and Vicinity.

Before: SMOLENSKI, P.J., and MURPHY and DAVIS, JJ.

DAVIS, J. Defendant/cross-plaintiff/cross-defendant Flotation Docking Systems, Inc. (FDS), appeals as of right an order entering a partial consent judgment. That order was later determined to have fully determined the rights and liabilities of all parties. The issue before us arose out of an earlier order in which the trial court held that a mortgage lien held by defendant/cross-plaintiff/cross-defendant/third-party plaintiff Carpenters Pension Trust Fund-Detroit and Vicinity (Carpenters) was superior to all other liens later recorded on a piece of real property, including a construction lien held by FDS. We affirm.

Carpenters loaned $9 million to Tri-Mount/Bay Harbor Building Company, Inc. (Tri-Mount). The loan was secured by a mortgage interest in a parcel of real property located in Emmet County. The mortgage financed the purchase of the property and secured future advances, not to exceed the face value of the note, to the mortgagor for the construction of certain improvements. These improvements included a 37-lot subdivision and a 45-unit boat dock condominium project. Carpenters properly recorded the mortgage on February 11, 1998, the day after the loan was made. A notice of commencement of improvements was recorded on May 17, 1999. It is undisputed that the mortgage was recorded before the first actual physical improvement

to the property occurred. FDS contracted with Tri-Mount to construct certain detachable docks for the development. FDS began construction on July 8, 2000, and recorded a lien for $222,635.40 on the property on January 2, 2001. Tri-Mount eventually defaulted on the mortgage.

This suit was commenced when Dave Stocker, doing business as Dave's Drywall Company (Stocker), filed suit to foreclose his construction lien against Carpenters, FDS, and other companies and individuals with interests in the property. FDS cross-complained to foreclose its construction lien. Carpenters then filed a counter-cross- and third-party complaint for foreclosure of the mortgage. Carpenters and Tri-Mount entered two consent judgments of foreclosure on the property. These consent judgments allowed Carpenters to foreclose on portions of the property as long as it resolved the priority of its mortgage lien before holding a foreclosure sale. Carpenters moved for partial summary disposition, seeking a declaration that its mortgage had priority over any other liens on the property. FDS was the only party to oppose the motion. On November 17, 2003, the trial court heard and granted Carpenters' motion for summary disposition pursuant to MCR 2.116(C)(10).

On appeal, FDS argues that a construction lien takes priority over a purchase money mortgage where the lien is on an improvement that can easily be removed without damaging the land. A grant or denial of summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, is reviewed de novo on the basis of the entire record in the light most favorable to the nonmoving party to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118, 120; 597 NW2d 817 (1999).

This matter requires us to interpret the Construction Lien Act (CLA), MCL 570.1101 *et seq*. Statutory interpretation is a question of law that is also reviewed de novo. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). The goal of statutory interpretation is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). "However, if a statute is susceptible to more than one interpretation, judicial construction is proper to determine legislative intent. Statutory language should be construed reasonably, keeping in mind the purpose of the act." *People v Spann*, 250 Mich App 527, 530; 655 NW2d 251 (2002) (citations omitted), aff'd on other grounds 469 Mich 904 (2003). Our Supreme Court has explained that the purpose of the CLA is "to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs." *Vugterveen Sys, Inc v Olde Millpond Corp*, 454 Mich 119, 121; 560 NW2d 43 (1997). The CLA should be "liberally construed to effectuate these purposes." *Id*.

MCL 570.1119(4) provides that a mortgage "recorded before the first actual physical improvement to real property shall have priority over a construction lien arising under this act." Ostensibly, our analysis ends there inasmuch as this case involves a purchase-money mortgage that was recorded the day after it was made, before any improvements were made, and well before FDS became involved. However, specific statutory provisions control general ones. *Antrim Co Treasurer v Dep't of Treasury*, 263 Mich App 474, 484; 688 NW2d 840 (2004). On that basis, FDS urges us to consider the effect of MCL 570.1107, which provides in relevant parts as follows:

(1) Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property shall have a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property, as described in the notice of commencement provided for by section 108 or 108a, the interest of an owner who has subordinated his or her interest to the mortgage for the improvement of the real property, and the interest of an owner who has required the improvement. A construction lien acquired pursuant to this act shall not exceed the amount of the lien claimant's contract less payments made on the contract.

\* \* \*

(3) Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property to which the person contracting for the improvement had no legal title shall have a construction lien upon the improvement for which the contractor, subcontractor, supplier, or laborer provided labor, material, or equipment. The forfeiture, surrender, or termination of any title or interest held by any owner or lessee who contracted for an improvement to the property or by any owner who subordinated his or her interest to the mortgage for the improvement, or by any owner who has required the improvement shall not defeat the lien of the contractor, subcontractor, supplier, or laborer upon the improvement.

The first sentences of these two subsections describe how construction liens arise under two contrasting situations: in subsection 1, where the entity with whom the lienholder contracted had title to the improved property and in subsection 3, where the same entity did not have title to the improved property. The first sentences of these two subsections are therefore only background to this appeal, because Carpenters apparently concedes that FDS had a lien under the CLA. We are therefore not concerned with the minutia of how that lien arose. It is sufficient to note that it existed.

FDS argues that the important consideration is the second sentence of subsection 3. Specifically, FDS argues that this provision precludes subjugation of its lien to Carpenters' mortgage. We disagree.

The dispositive word in this sentence is "defeat." Because this word is not defined in the CLA, "we may consult dictionary definitions." *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). Black's Law Dictionary (8th ed) defines "defeat" as "to deprive (someone) of something expected," "to annul or render (something) void," "to vanquish" or "to conquer," or "to frustrate (someone or something)." Its more common definitions are similar: "to overcome in a contest; vanquish," "to frustrate; thwart," "to deprive of something expected," "to annul," and similar definitions. *Random House Webster's College Dictionary* (2001). All these definitions share the characteristic of implying some kind of outright negation. When we read "defeat" in the context of MCL 570.1107(3) and the remainder of the CLA, as we must, *Shinholster v Annapolis Hosp*, 471 Mich 540, 549; 685 NW2d 275 (2004), it refers not to priority but to existence. In other words, the second sentence merely provides that the lien is not *destroyed* when the entity with whom the lienholder contracted loses title to the relevant property.

MCL 570.1119(4) and MCL 570.1107(3) address different issues. In effect, MCL 570.1107(3) provides for the creation of a construction lien under certain circumstances and for its continued existence in others, whereas MCL 570.1119(4) provides for prioritization of construction liens relative to other encumbrances. Because there is no dispute that FDS had a valid lien, MCL 570.1107(3) operates only to ensure that lien's continued existence after Tri-Mount lost its interest in the

property. Contrary to FDS's discussion regarding the word "termination," the manner in which Tri-Mount lost that interest is of no real import to this case. The significance of that section here is that, because FDS had a valid lien before Tri-Mount lost its interest, FDS continues to have a valid lien. The only remaining question is where that lien stands in priority relative to Carpenters' mortgage. In answer, the CLA's priority scheme is found in MCL 570.1119(4), which unambiguously states that the mortgage is superior.

We do not find relevant *Norcross Co v Turner-Fisher Assoc*, 165 Mich App 170; 418 NW2d 418 (1987), the only other published opinion interpreting the relevant portion of the CLA. That case was concerned with the existence of a lien and whether it attached to the fee interest in improved property or only to the improvement itself. It did not address the issue before us here.

Carpenters argues that MCL 570.1107(3) does not apply to FDS because FDS's lien arose under subsection 1. We disagree. The second sentence of subsection 3 does not provide such limited applicability. Its unambiguous language states that "the lien" shall not be defeated. Given that the first sentence applies to a situation in which the contracting entity lacks title, whereas the second sentence refers to losing title, the two sentences are logically placed into the same subsection because they apply to similar situations, not because the second sentence is intended to follow the first chronologically. As we have said, the second sentence of subsection 3 preserves existing construction liens when the entity that contracted for the subject improvement loses the relevant interest in the improved property.

Ranking the mortgage above the lien in priority does not intrinsically destroy the lien. Thus, our interpreta-

tion of the CLA raises no specter of a conflict between MCL 570.1119(4) and MCL 570.1107(3).

Affirmed.