*In re* APPLICATION OF CONSUMERS ENERGY COMPANY

Docket No. 274471. Submitted February 5, 2008, at Lansing. Decided October 21, 2008, at 9:05 a.m.

Consumers Energy Company filed an application with the Public Service Commission (PSC) for the approval of a power supply cost recovery (PSCR) plan and the authorization of PSCR factors for calendar year 2006. The Michigan Environmental Council (MEC) and the Public Interest Research Group In Michigan (PIRGIM) intervened and offered evidence concerning opportunities to reduce the PSCR factors through conservation, energy efficiency, and demand-side management. A hearing referee struck the evidence and corresponding advocacy from MEC and PIRGIM, ruling that the evidence was not properly before the PSC in the PSCR proceeding. MEC and PIRGIM appealed the referee's determination to the PSC, contending that a PSCR plan that does not address the matters for which they sought to introduce evidence was neither reasonable nor prudent for purposes of the requirements for PSCR plans stated in MCL 460.6j. The PSC affirmed the referee's determination. MEC and PIRGIM appealed.

The Court of Appeals *held*:

1. The PSC did not err in declining to condition approval of Consumers' PSCR plan on the existence of energy resource planning, efficiency, and conservation programs that the appellants sought to have included in the plan. Although MCL 460.6j requires the PSC to generally review for reasonableness and prudence a plan put forward by a utility, the statutory language does not imply that the PSC should use the PSCR process to require a utility to respond to an intervenor's recommendations, or require any specific programs intended to promote conservation, energy efficiency, or demand-side management.

2. The PSC did not err when, in 1997, it discontinued requiring that integrated resource plans or demand-side management programs be included in PSCR requests. The PSC did not err in declining to treat the PSCR plan in this case as unreasonable or imprudent because it did not include such plans or programs. This holding is supported by the facts that MCL 460.6j does not demand particular plans of the sort the appellants advocate, the PSC is not

bound by a single formula or method and continues to expect utilities to engage in reasonable and prudent planning activities, and the PSC has indicated that the arguments of the appellants could be addressed in other proceedings.

3. The PSC properly refused to entertain the evidence that relates to matters that the Court of Appeals determined were not required to be considered as part of Consumers' PSCR plan.

Affirmed.

PUBLIC UTILITIES — POWER SUPPLY COST RECOVERY PLANS.

The Public Service Commission need not require a public utility to include in a power supply cost recovery request an integrated resource plan or a demand-side management program; the commission must generally review the reasonableness and prudence of utilities' power supply cost recovery plans but is not bound by any single formula or method and need not require any specific programs intended to promote conservation, energy efficiency, or demand-side management (MCL 460.6j).

*Michael A. Cox,* Attorney General, *B. Eric Restuccia,* Solicitor General, and *David A. Voges* and *Michael A. Nickerson,* Assistant Attorneys General, for the Public Service Commission.

*Clark Hill PLC* (by *Don L. Keskey*) for the Michigan Environmental Council and the Public Interest Research Group In Michigan.

*Jon R. Robinson* and *John C. Shea* for Consumers Energy Company.

Before: MARKEY, P.J., and METER and MURRAY, JJ.

METER, J. Appellants Michigan Environmental Council and Public Interest Research Group In Michigan appeal as of right an order of the Public Service Commission (PSC) denying leave to appeal the decision of a hearing referee not to entertain certain advocacy from appellants and to strike their attendant evidence. We affirm.

I. FACTS

This case arose from the PSC's orders in response to an application by Consumers Energy Company (Consumers) for approval of a power supply cost recovery (PSCR) plan for 2006.

A PSCR factor is "that element of the rates to be charged for electric service to reflect power supply costs incurred by an electric utility and made pursuant to a power supply cost recovery clause incorporated in the rates or rate schedule of an electric utility." MCL 460.6j(1)(b). A PSCR clause is

> a clause in the electric rates or rate schedule of a utility which permits the monthly adjustment of rates for power supply to allow the utility to recover the booked costs, including transportation costs, reclamation costs, and disposal and reprocessing costs, of fuel burned by the utility for electric generation and the booked costs of purchased and net interchanged power transactions by the utility incurred under reasonable and prudent policies and practices. [MCL 460.6j(1)(a).]

Appellants entered this case as intervenors[1] and offered evidence concerning opportunities to reduce the PSCR factors through conservation, energy efficiency, and demand-side management (DSM). Consumers persuaded the referee to strike that evidence as not properly before the PSC in a PSCR proceeding. In response to the motion to strike, appellants unsuccessfully sought a declaratory ruling to the effect that the development of energy efficiency, conservation, and load management programs was a duty that Consumers was obliged to fulfill as part of the PSCR process.

---

[1] Michigan Power Limited Partnership and Ada Cogeneration Limited Partnership also entered this case as intervenors, but did not participate beyond the prehearing stage. Accordingly, those parties are not participating in this appeal.

Appellants argued that Consumers' PSCR plan should be rejected because it failed to address energy efficiency, conservation, or load management programs, asserting that a plan failing to address those items was neither reasonable nor prudent for purposes of MCL 460.6j. Appellants additionally argued that the stricken testimony would have shown the direct relationship between prudence under MCL 460.6j and energy efficiency, and that the testimony was therefore relevant in the PSCR proceeding. Appellants further argued that the denial of the motion for declaratory relief was contrary to the plain language, purposes, and objectives of MCL 460.6j because any PSCR plan that did not address opportunities to minimize energy costs was necessarily unreasonable and imprudent.

In affirming the referee's decision to strike the evidence in question, the PSC explained:

> The [referee] correctly rejected the motion for a declaratory ruling on the grounds that "the overall structure of the Commission's rules of practice and procedure rebuts MEC/PIRGIM's assertion that its request can and should be considered in the context of an existing case." None of the rulings that the groups seek are necessary to decide the contested case proceeding at hand. As the [referee] found, "Consumers is currently under no obligation to include (as part of its 2006 PSCR plan or the accompanying five-year forecast) an assessment of energy efficiency, conservation, or DSM programs."
>
> \* \* \*
>
> [T]he Commission agrees that the [referee] did not err by striking the testimony offered by MEC/PIRGIM witnesses concerning the need for conservation, energy efficiency, and DSM programs. However, in affirming the [referee's] ruling on the motion to strike the Commission notes that it does not intend to suggest that a party to an

Act 304[2] case should be precluded from proposing a rate design solution that encourages the efficient use of energy or conservation measures by a utility's customers. Likewise, the preclusion of intervenor testimony regarding non-rate design energy efficiency or conservation measures in an Act 304 proceeding does not apply to more appropriate forums, such as individual rate cases or special proceedings. . . . MEC/PIRGIM is encouraged to raise its energy efficiency and conservation concerns in a more appropriate forum . . . . [Citations omitted.]

This appeal followed.

## II. STANDARDS OF REVIEW

A final order of the PSC must be authorized by law and must be supported by competent, material, and substantial evidence. Const 1963, art 6, § 28; *Attorney General v Pub Service Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987). All rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed to be lawful and reasonable. MCL 462.25; see also *Michigan Consolidated Gas Co v Pub Service Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, an appellant must show that the PSC failed to follow a statutory requirement or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999).

In situations not involving the interpretation of a statute, a reviewing court should defer to the PSC's

---

[2] "Act 304" refers to 1982 PA 304, which is the legislation authorizing the use of a PSCR clause, MCL 460.6j.

administrative expertise and not substitute its judgment for that of the PSC. *Attorney General v Pub Service Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). An agency's interpretation of a statute, while entitled to " 'respectful consideration,' " "is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 93, 103; 754 NW2d 259 (2008).

"Whether the PSC exceeded the scope of its authority is a question of law that we review de novo." *In re Complaint of Pelland Against Ameritech Michigan*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

Evidentiary decisions are reviewed for an abuse of discretion. *Price v Long Realty, Inc*, 199 Mich App 461, 466; 502 NW2d 337 (1993). An abuse of discretion occurs only where the challenged decision fell outside the range of reasonable and principled outcomes. See *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

### III. RESOURCE PLANNING

Appellants first assert, according to their statement of questions presented, that the PSC declared itself "limited and powerless under statutory law to encourage the establishment of energy resource planning, and energy efficiency and conservation programs," and they then argue that the PSC erred in so declaring. In fact, we find no such declaration in the record. The PSC did, however, decline to condition approval of Consumers' PSCR plan on the existence of such a program within it, and in this regard it committed no error.

The parties recognize that the PSC has a long history of encouraging utilities to consider their options for providing energy, satisfying present and future demand,

and respecting concerns relating to costs, conservation, risks, and flexibility, along with environmental and social issues. In 1990, the PSC held that, in order to evaluate the reasonableness and prudence of the decisions underlying PSCR plans and forecasts, Consumers' future PSCR plans and forecasts would have to be derived from, and be consistent with, its most recent integrated resource plan (IRP). *In re Application of Consumers Power Co*, opinion and order issued March 29, 1990 (Case No. U-9172), p 23. The PSC elaborated that an IRP should include planning objectives, estimated costs of and potential contributions to meeting planning objectives in connection with resource options, load projections and resource requirements, combinations of resource options, sensitivity analyses testing the effect of changed circumstances on the performance and costs of selected resource options, and an action plan describing a preferred selection of resource options. *Id.* at 24-25.

However, in 1997, with the advent of competition in the state's electric industry, the PSC relieved utilities of the requirement that their PSCR requests include IRPs:

> In recognition of its goal of increased competition in Michigan's electric industry, the Commission concludes that Consumers should no longer be required to file integrated resource plans. Public review of and comment on integrated resource plans are not consistent with the competitive electric industry environment envisioned for Michigan. Such plans might provide information that could be useful to potential competitors and thus create a competitive disadvantage for Consumers. [*In re Application of Consumers Power Co*, order entered January 28, 1997 (Case No. U-9172), pp 1-2.]

However, the PSC added, "In relieving Consumers of the obligation to file integrated resource plans, the

Commission does not indicate that Consumers is also relieved of its obligation to engage in reasonable and prudent planning activities." *Id.* at 2.

In the instant case, the PSC reiterated that it imposed no obligation on Consumers to include an assessment of energy efficiency, conservation, or DSM programs with its PSCR plan, but it also stated that Consumers nonetheless retained an obligation to engage in reasonable and prudent planning activities, and it encouraged appellants to raise their "energy efficiency and conservation concerns in a more appropriate forum." The PSC thus expressed its openness to taking appellants' evidence and to encouraging Consumers to engage in scrupulous resource planning generally, even if not in the context of a PSCR proceeding. The real issue, then, despite appellants' failure to frame it this way, is whether the PSC erred in declining to require that Consumers include an IRP or DSM program as part of its PSCR request.

Appellants acknowledge that that the PSC years ago discontinued its practice of requiring planning programs as part of PSCR plans, but they do not assert explicitly that that policy change was ill-advised and they do not discuss the PSC's expressed concern that requiring the publication of the particulars of such programs would work against the competitive marketplace that a new legal framework was bringing about.[3]

As noted earlier, while an agency's interpretation of a statute is entitled to " 'respectful consideration,' " a

---

[3] We note that the federal Public Utility Regulatory Policies Act of 1978 encourages the development of alternative power sources in the form of cogeneration and small power production facilities and authorizes the promulgation of rules to require electric utilities to offer to purchase electricity from qualifying cogeneration facilities. 16 USC 824a-3(a)(2).

reviewing court may not abandon its responsibility to interpret statutory language and legislative intent. *In re Rovas Complaint, supra* at 93.

Although MCL 460.6j(1)(a) authorizes the establishment of a PSCR clause for recovering the costs of generating or otherwise obtaining power "under reasonable and prudent policies and practices," the statute calls on the PSC to generally review for reasonableness and prudence what a utility has put forward; the statutory language does not imply that the PSC should use the PSCR process to require a utility to respond to an intervenor's recommendations or require any specific programs intended to promote conservation, energy efficiency, or demand-side management.

The PSC is entitled to consider "all lawful elements" in determining rates. MCL 460.557(2); see also *Detroit Edison Co v Pub Service Comm*, 221 Mich App 370, 385; 562 NW2d 224 (1997). Moreover, "[t]he PSC is not bound by any single formula or method and may make pragmatic adjustments when warranted by the circumstances." *Id.* at 375. Accordingly, the PSC may authorize rates based on the reasonable costs of a DSM program, *id.* at 386, but may not "order [a] utility to follow particular principles of economic management," *id.* at 387.

Appellants point out that they were not purporting to impose on Consumers any specific plan, but were instead only suggesting that the PSC treat a PSCR plan that lacked any resource planning programs as unreasonable and imprudent on its face. Significantly, appellants do not otherwise purport to identify anything about the PSCR plan in question that renders it unreasonable or imprudent. Given that (1) MCL 460.6j does not demand particular plans of the sort appellants advocate, (2) the PSC is not bound by any single

formula or method, (3) the PSC continues to expect a utility to engage in reasonable and prudent planning activities, and (4) the PSC has demonstrated its openness to appellants' advocacy along those lines in other proceedings, we hold that the PSC was within its rights in discontinuing the requirement for IRPs or DSM programs with PSCR plans in the first instance and in declining to treat a PSCR plan as unreasonable or imprudent for want of such a plan in this instance.

### IV. STRICKEN EVIDENCE

Appellants additionally argue that the PSC erred in striking certain testimony and exhibits they offered. We disagree.

The testimony in question related to the possible economic benefits that may be derived from conservation, energy efficiency, and DSM projects; Consumers' recent announcement that it would like to sell its Palisades nuclear plant during 2007 and buy back the facility's capacity and energy through a power purchase agreement; and appellants' assertion that Consumers should either stop collecting the surcharge mandated by the Nuclear Waste Policy Act of 1982, 42 USC 10101 *et seq.*, or stop forwarding the funds thus collected to the United States Department of Energy for use in establishing and operating a permanent spent nuclear fuel repository.

### A. CONSERVATION, ENERGY EFFICIENCY, AND DSM PROJECTS

Appellants argue that the PSC improperly upheld the referee's decision to strike testimony and exhibits they offered relating to conservation, efficiency, and DSM projects. Because we concluded above that the PSC was within its rights in declining to require such projects as

part of a PSCR plan, we conclude here that the PSC properly struck the evidence relating to them.[4]

B. PROPOSED SALE OF THE PALISADES PLANT

The referee, in the proposal for decision, explained:

[T]he problem with MEC/PIRGIM's proposed testimony is not one of relevance, at least in the long term. [T]he [referee] concedes that "the effect that the actual sale of the plant and [the] successful signing of a Power Purchase Agreement might have on ratepayers is something that . . . could be investigated in the context of an Act 304 case." However, at the present time, no sale has occurred and no power purchase agreement has been negotiated—let alone approved by the Commission, as would likely be required pursuant to Section 6j(13) of Act 304. Instead, all we have is the utility's announcement that it would "like" to sell the plant at some time following the close of the PSCR plan year at issue in this proceeding. Thus, MEC/PIRGIM's currently proposed testimony on this issue—as well as any that might be obtained by requiring Consumers to supplement its current five-year forecast to include the effects of the plant's potential sale—constitutes pure speculation. [Citation omitted.]

The referee's reasoning is sound on its face, and appellants directly attack no part of it. Because a sale of the Palisades plant was only in the conceptual stages at the time, appellants' testimony concerning the implications of such a sale was properly stricken.

C. SPENT NUCLEAR FUEL

Appellants have repeatedly sought to make an issue of how utilities manage the problem of spent nuclear fuel. This Court has published a decision declaring that

---

[4] As noted by the PSC in this case, such evidence might be appropriate in an individual rate case.

the PSC properly refused to entertain appellants' advocacy in this regard. *In re Application of Indiana Michigan Power Co*, 275 Mich App 369, 374-380; 738 NW2d 289 (2007). Citing that case, this Court more recently disposed of such arguments without elaboration. *In re Application of Detroit Edison Co*, 276 Mich App 216, 240-241; 740 NW2d 685 (2007). In light of caselaw establishing that the PSC is not obliged to entertain appellants' proposals concerning spent nuclear fuel, the decision in this instance to strike the related evidence is unassailable.

Affirmed.