*In re* MICHIGAN CONSOLIDATED GAS COMPANY'S COMPLIANCE
WITH 2008 PA 286 AND 295

Docket No. 292683. Submitted May 11, 2011, at Lansing. Decided
September 13, 2011, at 9:05 a.m.

The Public Service Commission (PSC) opened dockets for all rate-regulated natural gas distribution companies to ensure the timely implementation of the Clean, Renewable, and Efficient Energy Act (the Act), MCL 460.1001 *et seq.*, which requires regulated utilities to adopt energy-optimization plans to reduce the demand for energy. Michigan Consolidated Gas Company (MichCon) applied for approval of its energy-optimization plan as the Act required. The Association of Businesses Advocating Tariff Equity (ABATE) intervened to argue, among other things, that customers who purchase only gas transportation services and not the commodity itself should not be subject to surcharges to recover the cost of implementing energy-optimization plans. The PSC approved MichCon's energy-optimization plan, and ABATE appealed.

The Court of Appeals *held*:

1. The PSC's conclusion that natural gas transportation customers are "natural gas customers" under MCL 460.1089(2) was not unlawful or unreasonable given that it comported with the language of the Act and its purpose. Under MCL 460.1089(1), a natural-gas provider whose rates are regulated, such as MichCon, is entitled to recover the actual costs of implementing its approved energy-optimization plan, and MCL 460.1089(2) requires that these costs be recovered from all natural gas customers.

2. The PSC correctly decided that former MCL 460.1093(1) only allowed exemption for eligible electric customers from the energy-optimization-plan charges of their electric providers, not those of their gas providers. Former MCL 460.1093(1) provided that eligible electric customers were exempt from charges that they would have otherwise incurred under MCL 460.1089 and MCL 460.1091 if they filed a self-directed energy-optimization plan with their electric providers and implemented the plan. The PSC correctly determined that the charges referred to in former MCL 460.1093(1) were limited to the charges for electric service that would otherwise be applicable and did not include the charges

for the gas providers' optimization plans, given that the self-directed plan effectively replaces participation in the electric providers' optimization plan and that the PSC's interpretation otherwise comported with the language of the Act and the Legislature's subsequent amendment of MCL 460.1093(1).

3. ABATE failed to establish that the Act's requirement that the PSC approve MichCon's energy-optimization plan within 90 days after the utility filed its application violated ABATE's constitutional right to due process or the statutory right to a reasonable opportunity for a full and complete hearing. ABATE failed to offer any evidence that the time limit prejudiced it or its members.

Affirmed.

1. PUBLIC UTILITIES — ENERGY-OPTIMIZATION PLANS — COST RECOVERY — NATURAL GAS CUSTOMERS.

Under the Clean, Renewable, and Efficient Energy Act, a provider whose rates are regulated is entitled to recover the actual costs of implementing its approved energy-optimization plan from all natural gas customers, including those customers who only purchase gas transportation services from the provider (MCL 460.1089).

2. PUBLIC UTILITIES — ENERGY-OPTIMIZATION PLANS — COST RECOVERY — EXEMPTION FOR ELIGIBLE ELECTRIC CUSTOMERS.

Eligible electric customers are exempt from charges that the customer would otherwise incur under the cost-recovery provisions of the Clean, Renewable, and Efficient Energy Act if the customer files a self-directed energy-optimization plan with its electric provider and implements the plan; the charges the customer would otherwise incur as part of the cost-recovery plan refers to the customer's electric-optimization plan costs (Former MCL 460.1093[1], as added by 2008 PA 295).

*Clark Hill PLC* (by *Thomas E. Maier* and *Robert A. W. Strong*) for the Association of Businesses Advocating Tariff Equity.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, and *Steven D. Hughey* and *Patricia S. Barone*, Assistant Attorneys General, for the Public Service Commission.

Before: MARKEY, P.J., and FITZGERALD and SHAPIRO, JJ.

MARKEY, P.J. Appellant Association of Businesses Advocating Tariff Equity (ABATE)[1] appeals by right a June 2, 2009, order of the Michigan Public Service Commission (PSC), approving the energy optimization plan submitted by Michigan Consolidated Gas Company (MichCon) pursuant to Michigan's Clean, Renewable, and Efficient Energy Act, 2008 PA 295, MCL 460.1001 *et seq.* (the Act).[2] We affirm.

I. BACKGROUND

The Act became effective on October 6, 2008. MCL 460.1191 provides that the PSC was to issue a temporary order implementing the Act within 60 days of its passage. As discussed more fully in this Court's related case, *In re Review of Consumers Energy Co Renewable Energy Plan*, 293 Mich App 254; 820 NW2d 170 (2011), subpart A requires regulated electric utilities to adopt "renewable energy plan[s]" in which the electric companies are required to demonstrate how they would achieve compliance with the Act's requirements for obtaining electric capacity and energy production from "renewable energy resource[s]" as defined in part 1 of

---

[1] ABATE describes itself as "a voluntary association of large industrial businesses which are located in and doing business in the State of Michigan." According to its petition to intervene, its members "consume substantial quantities of electricity and natural gas and in Michigan alone their combined gas and electric bills exceed $1.2 billion annually." ABATE's filing further indicates that some of its members are customers of Michigan Consolidated Gas Company among other providers.

[2] The underlying petition in this case also addressed MichCon's compliance with 2008 PA 286, which, among other things, prevents a gas utility from increasing the cost of its services to customers without PSC approval. See MCL 460.6a(1). That act is not directly at issue in this appeal.

the Act. See MCL 460.1011 and MCL 460.1021 through MCL 460.1053. Subpart B of the Act requires, among other things, that regulated electric and natural gas providers adopt "energy optimization plan[s]." See MCL 460.1071 through MCL 460.1097. Broadly speaking, an energy optimization plan is designed to reduce the demand for energy and provide for load management, and thus reduce the future costs of providing service to customers. Specifically, these plans are meant "to delay the need for constructing new electric generating facilities and thereby protect consumers from incurring the costs of such construction." MCL 460.1071(2). See also MCL 460.1001(2) (stating the Act's purpose). Combination utilities are to adopt both electric and natural gas energy optimization plans. The Act provides companies with the option of enacting their own energy optimization plans with PSC approval, see MCL 460.1071 through MCL 460.1089, or of turning to an "independent energy optimization program administrator," a nonprofit organization selected by the PSC through a competitive bid process, MCL 460.1091. Certain electric customers may also opt to enact a self-directed energy optimization plan. MCL 460.1093. Also, gas or electric companies are permitted to recover certain costs for the energy optimization plans from their customers, see MCL 460.1089 and MCL 460.1091(3), while electrical customers who have a self-directed plan would be exempt from some of the utilities' plan costs, MCL 460.1093(1), as we will discuss further.

The PSC conducted meetings and discussions on a proposed order and released its temporary order on December 4, 2008, followed by amendatory orders on December 23, 2008, and January 13, 2009. *In re Temporary Order to Implement 2008 PA 295* (PSC Case No.

U-15800).[3] At the same time, to comply with the strict time limits placed on the PSC to complete the initial phases of the implementation process by MCL 460.1021 and MCL 460.1073, the PSC opened dockets for all rate-regulated natural gas distribution companies, including MichCon. MichCon then filed a notice of intent to file an application to seek review approval of its energy optimization plan for 2009, 2010, and 2011. On March 4, 2009, MichCon filed its application with supporting testimony and exhibits for approval of its energy optimization plan. Among other surcharges it sought to impose on its customers for implementation of the plan was a surcharge of $0.0009/Ccf[4] on MichCon's "End Use Transportation" customers,[5] some of which are ABATE members. A hearing was held on the proposed plan on April 20, 2009, and briefs were subsequently submitted on May 5, 2009. With respect to the surcharge at issue here, ABATE, which had moved to intervene and was granted permission to do so,[6] continued its arguments, first raised in *In re Rules*

---

[3] The temporary order, by its own terms, was to last only for a year while the PSC promulgated administrative rules to administer the Act in *In re Rules Governing Renewable Energy Plans* (PSC Case No. U-15900). However, to date, the PSC has only proposed a number of rules to administer the Act and is in the process of seeking public comment. *In re Rules Governing Renewable Energy Plans*, order entered April 27, 2010 (PSC Case No. U-15900).

[4] "Ccf" refers to "centum cubic feet" or 100 cubic feet of natural gas.

[5] "End use transportation customers" are individuals and entities who purchase only transportation services from the gas utility, as opposed to customers who purchase both gas commodity and transportation (known as "direct" customers) from MichCon. On appeal, ABATE refers to end use transportation customers as "gas transportation only customers." No party uses the Act's nomenclature of "distribution customers" from MCL 460.1089(5), but we find these terms synonymous and treat them as such.

[6] Given this fact, we reject the challenge to ABATE's standing to dispute the rights of customers who choose to establish self-directed energy optimization plans. The PSC had discretion to allow intervention,

*Governing Renewable Energy Plans* (PSC Case No.
U-15800), that natural gas transportation customers
cannot be subject to energy optimization plan sur-
charges of their transportation providers. It also chal-
lenged MichCon's proposed gas surcharge for these
customers. ABATE also argued, again consistently with
its argument in U-15800, that electric customers who
file self-directed electric energy optimization plans with
their electric providers should be exempt under MCL
460.1093(1) not only for their electric providers' energy
optimization plan surcharges, but from their gas pro-
viders' energy optimization plan surcharges as well.
However, consistently with its holding in the initial
case, the PSC again rejected these arguments and
approved MichCon's energy optimization plan, includ-
ing the surcharges on the gas transportation customers.

## II. GAS TRANSPORTATION CUSTOMERS' INCLUSION IN MICHCON'S ENERGY OPTIMIZATION PLANS

ABATE argues that the PSC erroneously interpreted
the language of MCL 460.1089(2) to rule that gas
transportation only customers were "natural gas cus-
tomers" subject to a $0.0009/Ccf surcharge to fund
MichCon's energy optimization plan.

As explained in *In re Application of Detroit Edison
Co*, 276 Mich App 216, 224-225; 740 NW2d 685 (2007):

> The standard of review for PSC orders is narrow and
> well-defined. Pursuant to MCL 462.25, all rates, fares,
> charges, classification and joint rates, regulations, prac-
> tices, and services prescribed by the PSC are presumed,
> prima facie, to be lawful and reasonable. *Michigan Con-
> solidated Gas Co v Pub Service Comm*, 389 Mich 624,
> 635-636; 209 NW2d 210 (1973). A party aggrieved by an

Mich Admin Code, R 460.17201, and permitted ABATE's intervention
without limitation, Mich Admin Code, R 460.17205.

order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint,* 460 Mich 396, 427; 596 NW2d 164 (1999). And, of course, an order is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Pub Service Comm,* 377 Mich 259, 279; 140 NW2d 515 (1966). In sum, a final order of the PSC must be authorized by law and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney General v Pub Service Comm,* 165 Mich App 230, 235; 418 NW2d 660 (1987).

"An agency's interpretation of a statute, while entitled to 'respectful consideration,' 'is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue.' " *In re Application of Consumers Energy Co,* 281 Mich App 352, 357; 761 NW2d 346 (2008), quoting *In re Complaint of Rovas Against SBC Mich,* 482 Mich 90, 93, 103; 754 NW2d 259 (2008) (quotation marks omitted).

With respect to this Court's review of the PSC's factual determinations:

Judicial review of administrative agency decisions must "not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views." *Employment Relations Comm v Detroit Symphony Orchestra,* 393 Mich 116, 124 [223 NW2d 283] (1974); see also *In re Payne,* 444 Mich 679, 692-693 [514 NW2d 121] (1994) ("When reviewing the decision of an administrative agency for substantial evidence, a court should accept the agency's findings of fact, if they are supported by that quantum of evidence. A court will not set aside findings merely because alternative findings also could have been supported by substantial

evidence on the record."). [*In re Application of Detroit Edison Co*, 483 Mich 993 (2009).]

With regard to the question of whether natural gas transportation customers should not be subject to a $0.0009/Ccf surcharge to fund MichCon's energy optimization plan, we find ABATE's arguments unpersuasive. Gas transportation customers are "natural gas customers" under MCL 460.1089(2). In resolving this issue we find persuasive and adopt this Court's previous analysis in *In re Temporary Order to Implement 2008 PA 295*, unpublished opinion per curiam of the Court of Appeals, issued October 14, 2010 (Docket No. 290640), pp 4-7:

> When interpreting statutory language, this Court's primary goal is to give effect to the intent of the Legislature. "The first step is to review the language of the statute. If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute." *Briggs Tax Serv, LLC v Detroit Pub Schools*, 485 Mich 69, 76; 780 NW2d 753 (2010) . . . . This Court accords to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning, or is defined in the statute. *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999); *Stocker v Tri-Mount/Bay Harbor Bldg Co, Inc*, 268 Mich App 194, 199; 706 NW2d 878 (2005). See also MCL 8.3a; *Bay Co Prosecutor v Nugent*, 276 Mich App 183, 189-190; 740 NW2d 678 (2007). Furthermore, statutory language is to be read in context, and "statutory provisions are *not* to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole." *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010) . . . .

> Under MCL 460.1089(1), a provider whose rates are regulated by the PSC is entitled to recover "the actual costs of implementing its approved energy optimization plan."[4] Pursuant to MCL 460.1089(2), the utility is entitled to recover those costs from customers:

"Under subsection (1), costs shall be recovered from *all natural gas customers* and from residential electric customers by volumetric charges, from all other metered electric customers by per-meter charges, and from unmetered electric customers by an appropriate charge, applied to utility bills as an itemized charge." [Emphasis added.]

In the instant case, ABATE argues that individuals and entities who purchase only "transportation services" from the gas utility, i.e. natural gas transportation customers, are not "natural gas customers" of the utility and thus cannot be assessed the surcharge to fund the gas distribution utilities' energy optimization plans which ABATE maintains the "transportation only customers" cannot use.

The phrase "natural gas customers" is not specifically defined in the Act. The PSC noted this, but found that the Legislature intended the definition to include transportation customers. It based its decision on the fact that gas transportation customers were not explicitly excluded or distinguished in MCL 460.1089(1), that the transportation customers would receive benefits from inclusion in the providers' energy optimization plans, that the additional provisions of the Act include the revenues generated by sales to transportation customers, and that inclusion of these customers was consistent with the stated goals of the energy optimization provisions of the Act, as well as the stated goals of the Act itself.

Reading MCL 460.1089(2) in context with the other subsections of that statute, and in connection with the remaining provisions of the Act and the stated purpose of the Act in MCL 460.1001(2), *Robinson*, 486 Mich at 15, we hold that the PSC correctly found that a portion of the natural gas providers' energy optimization plan costs could be charged back to the providers' gas transportation customers. Gas transportation customers take their service from the providers pursuant to PSC-approved terms and rate schedules. The services they are provided by the regulated utility are "natural gas" services. And in the absence of even an assertion to the contrary, we find no error in the PSC's finding that all of ABATE's members do purchase natural gas commodity, albeit from another pro-

vider. Thus, in light of the specific language that costs shall be recovered from *"all* natural gas customers" (emphasis added), the PSC's interpretation does not "conflict with the Legislature's intent as expressed in the language of the statute at issue." *In re Application of Consumers Energy Co*, 281 Mich App at 357.

The language of MCL 460.1089(6), MCL 460.1089(7) and MCL 460.1091(1) provides further support for the PSC's decision. In pertinent part, MCL 460.1089(6) provides:

"The commission shall authorize a natural gas provider that spends a minimum of 0.5% of *total natural gas retail sales revenues, including natural gas commodity costs*, in a year on commission-approved energy optimization programs to implement a symmetrical revenue decoupling true-up mechanism that adjusts for sales volumes that are above or below the projected levels that were used to determine the revenue requirement authorized in the natural gas provider's most recent rate case." [Emphasis added.][7]

MCL 460.1089(7) provides in pertinent part:

"A natural gas provider or an electric provider shall not spend more than the following percentage of *total utility retail sales revenues, including electricity or natural gas commodity costs*, in any year to comply with the energy optimization performance standard without specific approval from the commission. . . . " [Emphasis added.]

Similarly, MCL 460.1091(1) provides that, except for MCL 460.1089(6), the requirements under MCL 460.1071 through MCL 460.1089 do not apply "to a provider that pays the following percentage of *total utility sales revenues, including electricity or natural gas commodity costs*, each year to an independent energy optimization program administrator selected by the commission[.]" (emphasis added).

We agree with the PSC's determination that these provisions support a finding that the Legislature intended

---

[7] We recognize the parties' agreement that "natural gas commodity costs" represents sales of the physical natural gas itself.

to include natural gas transportation customers in the providers' energy optimization plans (either administered internally or run by the PSC's program administrator) and to count the transportation revenues for purposes of determining the size of the plans and the ability to implement the true-up mechanism. ABATE argues that Consumers' reading of the statutes improperly renders "including natural gas commodity costs" or "including electricity or natural gas commodity costs" surplusage. However, it ignores the contrary argument that, if the Legislature intended the inclusion of only commodity costs, it would not have added the language concerning total sales, or total retail sales, revenue and that ABATE's interpretation would thus in turn improperly render this language surplusage. We do not find ABATE's argument persuasive. The language used in these sections indicates an intention by the Legislature that the provider is to include all of its utility sales revenues in its calculations.[5] Thus, the provider is to include the costs of the gas to direct customers, transportation sales to direct (or bundled) customers, and transportation sales to unbundled customers. While ABATE states that the question of what sales are to be included is not directly related to the question of which customers have to pay for the optimization plan costs, we disagree. The provider's costs are passed on to the customers under MCL 460.1089(2). And as ABATE repeatedly points out on appeal, an energy optimization plan is supposed to "[e]nsure, to the extent feasible, that charges collected from a particular customer rate class are spent on energy optimization programs for that rate class." MCL 460.1071(3)(d). Thus, when the provisions of the Act are viewed as a whole, the scope of an energy optimization plan is related to the Legislature's intention concerning which customers should be responsible for the costs of implementing the plan.[6]

MCL 460.1089(5) further supports a finding that the Legislature intended to include gas transportation customers in the phrase "all natural gas customers." That statute provides:

"The established funding level for low income residential programs shall be provided from each customer rate class in proportion to that customer rate class's funding of the provider's total energy optimization programs. Charges shall be applied to distribution customers regardless of the source of their electricity or natural gas supply."

The inclusion of "distribution customers" in this subsection provides support for the PSC's conclusion that the Legislature was aware of the existence of gas transportation customers and intended them to be included in "all natural gas customers" in MCL 460.1089(2). In addition, this subsection further supports the PSC's interpretation because it ties the customers' funding of the low income residential programs in "proportion to that customer rate class's funding of the provider's total energy optimization programs." In other words, the distribution customers' funding responsibilities for low income residential programs are to be proportionate to the distribution customers' funding of the total energy optimization program. This indicates an intent by the Legislature that the distribution customers, or gas transportation customers, share funding responsibility for the provider's total energy optimization program, and are thus included as "all natural gas customers" for recovery of energy optimization plan surcharges.[7]

In addition, the PSC reasonably found that the inclusion of gas transportation customers in the energy optimization programs of their transportation providers would have results consistent with the intentions of the Act as stated in MCL 460.1001(2). While MCL 460.1071(2) describes the goals of the energy optimization portion of the Act primarily in terms of reduction of electric usage, and of reducing the need to build more electric generating facilities, ultimately the Act is designed to promote electrical and natural gas energy efficiency. See e.g. MCL 460.1071(3)(f) and (4)(a). While reducing the gas transportation customer's gas usage does not directly result in increased future service capacity for the transportation provider, it could have the effect of increasing the future service capacity of the provider who sells the transportation customer its natural gas. These presumably could include municipal

providers, who are not subject to regulation by the PSC. See MCL 460.6. A demand reduction in one of ABATE's member companies results in an increased ability for such a utility to meet customer's [sic] future demands without investment in costly infrastructure. This is at least consistent with the goal of MCL 460.1001(2)(b) to provide greater energy security through the use of indigenous energy resources. This finding refutes ABATE's implicit argument that the natural gas transportation customers' gas usage is not relevant to the goals of the Act or of the creation of energy optimization plans.

For the above reasons, we hold that ABATE has not shown that the PSC's decision that natural gas transportation customers are responsible for energy optimization plan costs under MCL 460.1089(2) is unlawful or unreasonable.

---

[4] Some caveats apply for costs that exceed the overall funding levels specified in the plan, and "costs for load management" are not recoverable under this section.

[5] While the Act does not define "retail" sale, ABATE does not argue that a sale of transportation services does not constitute a retail sale, nor does it explain what such a sale would otherwise be. In addition, because the language of MCL 460.1091 does not use the phrase "retail" but includes the same percentages of revenue as those included in MCL 460.1089(7), and the sales of transportation services are to end user customers, we conclude that these services are intended to be viewed as retail sales.

[6] A similar conclusion could be made regarding the savings targets outlined in MCL 460.1077. The PSC's December 23, 2008 order clarified that these targets include sales volumes that include both choice and transportation sales volumes.

[7] With regard to ABATE's argument that it will not be able to participate in any of the benefit programs, Consumers correctly notes that ABATE acknowledges that gas transportation customers will be eligible to participate in and receive benefits from the energy optimization pro-

grams developed by the utilities, a fact that the PSC recognized in its order. ABATE's assertion as to the amount of the benefits its members will receive, and whether these benefits would run afoul of the requirements in MCL 460.1071(3)(d), is speculative.

ABATE has raised nothing new in the instant appeal to challenge this analysis. Most pertinently, while ABATE continues to complain that the gas transportation customers will not benefit from participation in the energy optimization plans, and in particular from MichCon's plan, it has still failed to provide any underlying testimony or evidence to support this assertion. According to MichCon's trial brief, as well as the testimony of its manager for business development, Gregory Woloszczuk, and its director of market development, Kevin McCrackin, MichCon's commercial and industrial customers, including gas transportation customers, would be offered two different programs: "prescriptive," with a fixed incentive for each measure the customer takes, and "non-prescriptive," in which the level of incentive is determined from the amount of savings the plan produces. According to MichCon's witnesses, the goal of the prescriptive program is to offer fixed incentives on "proven technologies" to install energy-efficient systems, such as heating and cooling systems, food service equipment, commercial laundry equipment, and energy-management systems in existing and new facilities. The non-prescriptive program—broken down into three subprograms: "custom," "request for proposal" (RFP), and "new construction"—involves incentives for energy-efficient equipment and controls that are considered nonstandard, either because they are unique applications or new technologies, in existing or new facilities. Woloszczuk testified that these programs would comprehensively

cover all of MichCon's consumer and industrial customers, that the programs would work in concert with each other, and that MichCon would provide engineering reviews of custom applications. McCrackin testified that he thought the "RFP offerings" were "broad enough to be available to all customers, and scalable enough that [MichCon] can meet the aggressive savings requirements." Given this testimony, it appears that MichCon planned that gas transportation customers would benefit from its energy optimization plan and take part in its incentives programs, even though the transportation customers receive gas commodity from a different source. Especially given ABATE's acknowledgement that its members will receive some benefit from participating, we find ABATE's argument unpersuasive.

Accordingly, we agree with this Court's decision in *In re Temporary Order to Implement 2008 PA 295* and conclude that the Legislature intended gas transportation customers to participate in MichCon's energy optimization plan.

### III. EXEMPTION UNDER MCL 460.1093(1)

ABATE next argues that the PSC erroneously construed former MCL 460.1093(1), which provided that "an eligible primary or secondary electric customer" is exempt from charges that the customer would otherwise incur under MCL 460.1089 and MCL 460.1091 if the customer files a self-directed energy optimization plan with its electric provider and implements the plan.[8] ABATE contends that the PSC improperly ruled that this exemption only applies to surcharges from

---

[8] As discussed further later in this opinion, this provision was amended by 2010 PA 269, effective December 14, 2010.

electric providers, despite the fact that MCL 460.1089 and MCL 460.1091 provide for electric and gas utilities to collect gas and energy optimization program costs.

Because we agree with this Court's previous analysis of this issue in *In re Temporary Order to Implement 2008 PA 295*, unpub op at 7-9, we adopt it:

> ABATE next argues that the PSC erroneously construed the language of MCL 460.1093(1), when it determined that an "eligible electric customer" could still be responsible for surcharges relating to the customer's natural gas provider's energy optimization plan, even if it filed a self-directed electrical energy optimization plan with its electric provider. We disagree.
>
> As a counterpart to MCL 460.1089 and MCL 460.1091, MCL 460.1093 provides an opportunity for certain electric customers to file a self-directed electric optimization plan. MCL 460.1093(2) defines eligibility based on the peak demand of the customer's facility or facilities. MCL 460.1093(1), the subject of the instant dispute, provides for exemption of the requirements and responsibilities the customer would otherwise have under the energy optimization plan of its provider, or as ABATE argues providers, under MCL 460.1089, or the provider or providers' "independent energy optimization program administrator" under MCL 460.1091. [Former] MCL 460.1093(1) provide[d]:
>
> > "An eligible primary or secondary electric customer is exempt from charges the customer would otherwise incur under section 89 or 91 if the customer files with its electric provider and implements a self-directed energy optimization plan as provided in this section."
>
> At issue is whether an eligible electric customer, who files a self-directed energy optimization plan with its electric provider[,] is exempt from the surcharges of only its electric provider under MCL 460.1089 or MCL 460.1091 or from both its gas and electric providers under those subsections.
>
> The PSC found that the Legislature did not have this intent, holding that it was highly unlikely that the Legis-

lature would have, in a section of the Act dealing explicitly with electric customers who file self-directed electric energy optimization plans, provided a loophole by which an electric sales customer who elects to do a self-directed electric program can avoid not only the electric surcharge, but also any gas surcharges assessed to gas sales customers. In holding that a customer is an electric customer only when purchasing electric service, the PSC determined that the charges referenced in MCL 460.1093(1) are therefore limited to charges for electric service that would otherwise be applicable.

We find the PSC's rationale persuasive. The phrase "is exempt from charges the customer would otherwise incur under section 89 or 91" is to be read in context with the remaining portions of MCL 460.1093, as well as the remaining portions of the Act. *Robinson*, 486 Mich at 15. The purpose of MCL 460.1089 and MCL 460.1091 is to provide alternative forms of provider-based energy optimization plans, and provide coverage for the cost of funding the plans. A self-directed energy plan obviates the need for the customer to participate in its electric provider's optimization plan, and effectively replaces it. See MCL 460.1093(7). [8] Thus, the "charges the customer would otherwise incur under [MCL 460.1089 or MCL 460.1091]" in this situation refers to the customer's electric optimization plan costs. Or, as stated by the PSC, a customer is an electric customer with respect to electric charges, and a gas customer with respect to gas charges.

The PSC's decision that the Legislature did not intend MCL 460.1093(1) to exempt the customers who file a self-directed energy optimization plan from all surcharges, whether gas or electric-related, they would otherwise incur under MCL 460.1089 or MCL 460.1091 is further supported by the language of [former] MCL 460.1093(4)(c).[9] This provision, which also pertains to customers who file a self-directed energy optimization plan, requires the PSC to "[p]rovide a mechanism to cover the costs of the low income energy optimization program under [MCL

---

[9] This language is now contained in MCL 460.1093(5)(c).

460.1089]." This program is found in MCL 460.1089(5), discussed above. Thus, reading MCL 460.1093(1) in conjunction with [former] MCL 460.1093(4)(c), we conclude that the Legislature did not intend for the filing of an electric self-directed energy optimization plan to serve as a blanket exemption from all of the other surcharges in MCL 460.1089 or MCL 460.1091. Notably, ABATE does not challenge on appeal the PSC's imposition of the "cost associated with the allocated portion for the provider's low income residential energy optimization program" on self-directed optimization plan customers. Accordingly, reading the language of MCL 460.1093(1) as a whole in conjunction with the remainder of MCL 460.1093, and the other provisions of the Act, we hold that ABATE has failed to show that the PSC's decision was unlawful or unreasonable.

---

[8] This section[10] provides:

"Once a customer begins to implement a self-directed plan at a site covered by the self-directed plan, that site is exempt from energy optimization program charges under section 89 or 91 and is not eligible to participate in the relevant electric provider's energy optimization programs."

---

Moreover, we also note that, in addition to other amendments of MCL 460.1093, the Legislature has since amended MCL 460.1093(1), which now provides in pertinent part: "An eligible electric customer is exempt from charges the customer would otherwise incur *as an electric customer* under section 89 or 91 if the customer files with its electric provider and implements a self-directed energy optimization plan as provided in this section." (Emphasis added.) This amendment supports the above analysis concerning the Legislature's intent.

---

[10] This language is now contained in MCL 460.1093(8).

Accordingly, the PSC correctly decided that former MCL 460.1093(1) only allowed exemption for eligible electric customers from their electric providers' energy optimization plan charges, not their gas providers' optimization plan charges.

### IV. NINETY-DAY REVIEW PERIOD

The Act requires that the PSC approve energy optimization plans, and renewable energy plans, within 90 days after the utility/provider files its application. As it argued in *In re Temporary Order to Implement 2008 PA 295*, ABATE maintains that this tight time frame and the orders of the PSC setting the schedules for this and other cases violated customers' rights under the Michigan Administrative Procedures Act (APA) and the Michigan Constitution. While we note that ABATE failed to raise this issue below, we will address it. We again find the analysis this Court used in *In re Temporary Order to Implement 2008 PA 295*, unpub op at 10-12, persuasive and adopt it:

MCL 460.1021(5) provides:

"The commission shall conduct a contested case hearing on the proposed plan filed under subsection (2),[11] pursuant to the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328. If a renewable energy generator files a petition to intervene in the contested case in the manner prescribed by the commission's rules for interventions generally, the commission shall grant the petition. Subject to [MCL 460.1021(6) and 420.1021(10)] after the hearing and within 90 days after the proposed plan is filed

---

[11] MCL 460.1021(2) requires each electric provider to file a proposed renewable energy plan within 90 days after the PSC issued its temporary order implementing the Act. MCL 460.1073(1) in turn provides, "A provider's energy optimization plan shall be filed, reviewed, and approved or rejected by the [PSC] and enforced subject to the same procedures that apply to a renewable energy plan."

with the commission, the commission shall approve, with any changes consented to by the electric provider, or reject the plan."

As noted by ABATE, MCL 460.6a(1) provides in pertinent part that, in certain proceedings before the PSC, "the effect of which will be to increase the cost of services to [the gas or electric utility] customers," interested parties are entitled to notice and a [sic] "a reasonable opportunity for a full and complete hearing." Pursuant to MCL 460.6a(2)(a), a " '[f]ull and complete hearing' means a hearing that provides interested parties a reasonable opportunity to present and cross-examine evidence and present arguments relevant to the specific element or elements of the request that are the subject of the hearing."

Here, even to the extent that ABATE is correct in its assertion that it, or other customers, are entitled to this procedure, it cannot show that the PSC's actions were improper. ABATE notes that our Supreme Court has held that the PSC should provide for a "full and complete hearing" to even procedures for interim rate relief, see *ABATE v Mich Public Service Comm*, 430 Mich 33, 36, 42-43; 420 NW2d 81 (1988), and argues that parties are entitled to these procedures in energy optimization plan proceedings. However, it ignores the Supreme Court's concurrent holding that, even in such a case, "[t]he PSC also retains discretion to define the standards upon which it bases a grant of interim relief, to define what issues and factors, in a given case, are relevant to those standards as opposed to the standards for final relief, and to limit evidence to the written form." *Id.* at 36. See also *id.* at 43-44. Thus, the PSC retains the ability to narrow the issues in rate optimization plan proceedings, and the relevant evidence, accordingly.

In its denial of ABATE's motion for rehearing or reconsideration, the PSC stated the Legislature intended to expedite energy optimization plan cases and thus only issues that are germane to the questions before the PSC should be entertained at the hearing. It further found that following the procedures set forth in the orders would not violate any party's rights because they provide for notice,

opportunity for intervention, offering evidence, cross-examining evidence presented by others, and presenting arguments.

ABATE has not offered evidence to show that the PSC's decision was unreasonable or unlawful, or that it has failed to provide a reasonable opportunity for a full hearing in energy optimization plan cases. ABATE's argument minimizes the fact that the Legislature, not the PSC, set forth the ninety-day plan review timeframe here. Essentially, through the language of MCL 460.1021(5), the Legislature has determined that, as to the review of energy optimization or renewable energy plans, ninety days presents a "reasonable opportunity to present and cross examine evidence and present arguments relevant to the specific element or elements of the requests that are subject to the hearing" under MCL 460.6a(2). And while ABATE argues that the PSC improperly informed the Legislature that such a timeframe was feasible, or at least did not inform the Legislature that the timeframe would present a problem, it does not provide support for this assertion.

As to ABATE's claims that the ninety-day window violates customers' due process rights under the Michigan Constitution, ABATE cites solely to Const 1963, art 6, § 28. It provides no analysis of its claims that the Legislature's actions violated its members' constitutional rights and no case law to support its assertions. "It is not sufficient for a party 'simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). "Failure to brief a question on appeal is tantamount to abandoning it." *Mitcham*, 355 Mich at 203.

In addition, ABATE essentially seeks declaratory relief concerning an alleged due process violation that has not yet occurred. ABATE asserts that the ninety-day window is insufficient to present and cross-examine evidence, but has not demonstrated this to be the case by providing particulars concerning what, if any, evidence, testimony, argument

or other matter it was not permitted to introduce or cross-examine in optimization plan cases as a result of the ninety-day period.

. . . We thus hold that ABATE has failed to demonstrate that the PSC's decision to adopt procedures consistent with the time frame set forth in MCL 460.1021(5) was unreasonable or unlawful.

ABATE's arguments in this case are essentially the same as those raised in its appeal from the initial temporary order. It again cites Const 1963, art 6, § 28, without any further discussion. And while it now has at least participated in a number of energy optimization cases, it provides nothing to show that the time limits imposed by MCL 460.1021(5) have actually caused it or its members to be prejudiced. ABATE has not, for example, cited any expert witness testimony it could not procure in time or any discovery that it tried to engage in and could not. As the PSC notes, ABATE did participate in this case and filed both an initial brief and a reply brief. In addition to the claims raised in this appeal, ABATE specifically challenged MichCon's actual proposed energy efficiency incentive on the grounds that it was unnecessary, poorly constructed, not cost-effective, and inconsistent with the proposed purpose of the incentive. ABATE has not yet produced anything concrete to show that it or its members lost protections under the APA or the Constitution.

Accordingly, we adopt the rationale in *In re Temporary Order to Implement 2008 PA 295* and conclude that ABATE has not met its burden of showing that the PSC's adoption of the time frame set out in MCL 460.1021(5) was unlawful or unreasonable.

We affirm.

FITZGERALD and SHAPIRO, JJ., concurred with MARKEY, P.J.