FEDERAL NATIONAL MORTGAGE ASSOCIATION v LAGOONS
FOREST CONDOMINIUM ASSOCIATION

Docket No. 313953. Submitted May 9, 2014, at Detroit. Decided May 15,
    2014, at 9:05 a.m.

    The Federal National Mortgage Association (Fannie Mae) brought an
    action in the Oakland Circuit Court against the Lagoons Forest
    Condominium Association, seeking, in part, declaratory relief in
    the form of an order releasing Fannie Mae from a lien with regard
    to delinquent condominium association fees filed by defendant
    against a condominium unit. RBS Citizen's Bank had purchased
    the unit at the sheriff's sale on March 1, 2011, after the owners of
    the unit defaulted on the mortgage. The sheriff's deed stated that
    the statutory redemption period would end on September 1, 2011,
    at which time the deed would become fully operative. On April 7,
    2011, RBS Citizens Bank transferred the property to Fannie Mae
    by quitclaim deed for $1. Defendant then filed an amendment to
    its lien, seeking more in unpaid association assessment fees and
    naming Fannie Mae as the owner of the unit. Defendant also sent
    a letter to Fannie Mae that claimed that because Fannie Mae never
    requested a written statement from defendant of the amount of
    unpaid assessments owed, pursuant to MCL 559.211(2), Fannie
    Mae owed defendant for all the unpaid assessments, including
    those that accrued before and those that accrued after the foreclo-
    sure sale. Fannie Mae's complaint also alleged common-law slan-
    der of title, statutory slander of title, and recording documents
    with the intent to harass or intimidate. Defendant filed a counter-
    complaint, and both parties moved for summary disposition. The
    trial court, Shalina D. Kumar, J., determined that, because Fannie
    Mae had not requested a written statement of the unpaid assess-
    ments at least five days before the property was transferred to it by
    RBS Citizens Bank, Fannie Mae owed the assessments, including
    those that accrued before the foreclosure sale. The trial court
    entered an order denying Fannie Mae's motion and granting
    defendant's motion. Fannie Mae appealed.

    The Court of Appeals held:

    1. Pursuant to MCL 559.158, both RBS Citizens Bank and
Fannie Mae were not liable for any assessments and fees that had

accrued on the unit before RBS Citizens Bank's purchase on March 1, 2011. The fact that Fannie Mae did not comply with MCL 559.211(2) by requesting a written statement from defendant before it obtained title from RBS Citizens Bank does not restore the association assessments that were eliminated by the foreclosure. The circumstance described in MCL 559.158 involving foreclosure sales is more specific than the circumstances involving generic sales or conveyances addressed in MCL 559.211. The provisions of MCL 559.158 and MCL 559.211 create a patent ambiguity and irreconcilably conflict with one another. The provisions of MCL 559.158, being the more specific, prevail over the provisions of MCL 559.211 in resolving this appeal.

2. Fannie Mae, as the successor of RBS Citizens Bank, is only liable for the assessments that accrued after RBS Citizens Bank acquired title to the unit. RBS Citizens Bank took title, albeit title limited by the statutory redemption period, on the date of the sheriff's sale, March 1, 2011. The equitable title the bank received on March 1, 2011, was sufficient "title" for purposes of MCL 559.158. Fannie Mae properly owes all the assessments from March 1, 2011, onward.

3. The trial court did not err by dismissing Fannie Mae's claims for common-law slander of title, statutory slander of title, and unlawful recording of documents with intent to harass or intimidate. It cannot be said that defendant filed an invalid lien with the intent to cause Fannie Mae injury. Defendant's claim under the lien was asserted in good faith, upon probable cause, or was prompted by a reasonable belief that it had rights in the condominium unit at issue.

Affirmed in part, reversed in part, and remanded.

1. STATUTES — JUDICIAL CONSTRUCTION.

Specific statutory provisions prevail over more general ones when confronted with two conflicting statutory provisions.

2. CONDOMINIUMS — FORECLOSURES — TITLE — ASSESSMENTS.

When a party obtains "title" to a condominium unit as a result of a foreclosure of a first mortgage, that party is not liable for the assessments by the administering body of the condominium that are chargeable to the unit that became due before the acquisition of title to the unit by that mortgagee or purchaser and his or her successors and assigns; an equitable title possessed by the purchaser at a sheriff's sale, which does not vest full title in its holder until the statutory redemption period expires, is a "title" for purposes of the rule (MCL 559.158).

3. ACTIONS — SLANDER OF TITLE — MALICE.

> To prove slander of title under the common law or MCL 565.108, a claimant must show falsity, malice, and special damages; the crucial element is malice; the claimant must show some act of express malice by the defendant, which implies a desire or intention to injure; malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury; a plaintiff may not prevail if the defendant's claim under the mortgage or lien was asserted in good faith, upon probable cause, or was prompted by a reasonable belief that the defendant had rights in the real estate in question (MCL 565.108).

*Trott & Trott, PC* (by *Charles L. Hahn*), for plaintiff.

*Zelmanski, Danner & Fioritto, PLLC* (by *Tracy N. Danner* and *Corene C. Ford*), for defendant.

Before: RIORDAN, P.J., and DONOFRIO and FORT HOOD, JJ.

DONOFRIO, J. Plaintiff/counterdefendant, Federal National Mortgage Association (Fannie Mae), appeals as of right an order denying summary disposition in its favor and granting summary disposition in favor of defendant/counterplaintiff, Lagoons Forest Condominium Association. For the reasons stated below, we affirm in part, reverse in part, and remand.

## I. BASIC FACTS

This case arises out of a foreclosure and subsequent sheriff's sale of a condominium unit in West Bloomfield, Michigan. The owners of the condominium unit had stopped making payments and defaulted on the mortgage. Additionally, the owners also had failed to pay their condominium association fees and owed defendant $2,460.58 in delinquent association assessment fees.

Defendant filed a lien against the property for the unpaid condominium assessments on January 5, 2006.

On March 1, 2011, at the sheriff's sale, RBS Citizens Bank purchased the unit for $162,800 and received a sheriff's deed for the property. The sheriff's deed stated that the statutory period for redemption by the previous owners would end on September 1, 2011, at which time the sheriff's deed would become fully operative. On April 7, 2011, RBS Citizens Bank transferred the property to Fannie Mae by quitclaim deed in exchange for $1.

On September 9, 2011, defendant filed an amendment to its existing lien against the condominium at issue. The amendment provided that the unpaid sum was $13,144.27 and that the owner of the condominium unit was Fannie Mae. On the same day, attorneys for defendant sent a letter to Fannie Mae claiming that because Fannie Mae never requested a written statement from the condominium association of the amount of unpaid assessments owed, pursuant to MCL 559.211(2), it owed defendant for all of the unpaid assessments, including those that accrued before and those that accrued after the foreclosure sale.

On March 29, 2012, Fannie Mae filed its complaint against defendant in this case. The complaint requested that the court grant declaratory relief in the form of an order releasing Fannie Mae from defendant's condominium lien. The complaint further alleged common-law slander of title, statutory slander of title, and recording of documents with the intent to harass or intimidate. Defendant filed a countercomplaint, alleging that Fannie Mae owed it $21,619.27 for unpaid assessments, late charges, and legal fees pursuant to the Condominium Act, MCL 559.101 *et seq.*

On June 27, 2012, Fannie Mae filed its motion for summary disposition, pursuant to MCR 2.116(C)(8), (9), and (10). Fannie Mae argued that the condominium fees were illegal because defendant's lien was extinguished by the foreclosure and that the provision of the Condominium Act requiring notice to the association before a transfer, MCL 559.211, does not apply to assignments after a foreclosure. Fannie Mae further argued that the acquisition of title that occurs as the result of a sheriff's sale does not take place until after the statutory redemption period, rather than on the date of sale. Finally, Fannie Mae argued that its claims for slander of title and unlawful recording of documents with the intent to harass or intimidate were proper because defendant knew that its condominium lien was illegal at the time it filed the amendment.

On July 31, 2012, defendant filed its competing motion for summary disposition pursuant to MCR 2.116(C)(8), (9), and (10). Defendant argued that there was no genuine issue of material fact that Fannie Mae acquired title to the condominium unit as a result of the quitclaim deed from RBS Citizens Bank and, as a result of Fannie Mae's failure to pay the amount owed or to request a written statement setting forth the unpaid fees, Fannie Mae was liable for the full amount of assessments and costs. Further, defendant argued that Fannie Mae failed to state a claim on which relief could be granted for either its claims for slander of title or recording of documents with the intent to harass or intimidate.

On September 19, 2012, the trial court held a hearing on the parties' competing motions for summary disposition. The trial court determined that MCL 559.211 did not distinguish between types of conveyances, which meant that RBS Citizens Bank's transfer to Fannie Mae

was a conveyance under the statute. Consequently, because Fannie Mae had not requested a written statement of the unpaid assessments at least five days before the sale, it owed "*any* unpaid assessments against the condominium," which included assessments owed on the condominium that accrued before the foreclosure. The trial court entered an order denying Fannie Mae's motion and granting defendant's motion.

## II. STANDARD OF REVIEW

Both parties moved for summary disposition pursuant to MCR 2.116(C)(8), (9), and (10). But because the parties relied on materials outside the pleadings, such as the mortgage filings attached to the parties' briefs in this case, this Court will treat the trial court's decision as one based on MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). In reviewing a grant of summary disposition under MCR 2.116(C)(10), this Court considers the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Sallie v Fifth Third Bank*, 297 Mich App 115, 117-118; 824 NW2d 238 (2012). Summary disposition is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10); *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). A genuine issue of

material fact exists when, after viewing the evidence in the light most favorable to the nonmoving party, the record leaves open an issue upon which reasonable minds may differ. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

But to the extent that our review involves issues of statutory interpretation, that aspect of our review is de novo. *Podmajersky v Dep't of Treasury*, 302 Mich App 153, 162; 838 NW2d 195 (2013). The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006). To ascertain the Legislature's intent, we look to the language in the statute and give the words their plain and ordinary meanings. *Lafarge Midwest, Inc v Detroit*, 290 Mich App 240, 246; 801 NW2d 629 (2010). If the plain and ordinary meaning is otherwise clear, "judicial construction is neither required nor permitted." *In re Receivership of 11910 S Francis Rd*, 492 Mich 208, 222; 821 NW2d 503 (2012). Judicial construction is only appropriate when an ambiguity exists in the language of the statute. *Whitman v City of Burton*, 493 Mich 303, 312; 831 NW2d 223 (2013). A statute is ambiguous when it irreconcilably conflicts with another provision or is equally susceptible to more than a single meaning. *Lansing Mayor v Pub Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004).

### III. ANALYSIS

#### A. CONDOMINIUM ACT

Fannie Mae first contends that the trial court erred by ruling that it was liable for association assessments because the court's application of MCL 559.211 to the instant case was improper. We agree, in part.

MCL 559.211 provides, in pertinent part:

(1) Upon the sale or conveyance of a condominium unit, all unpaid assessments, interest, late charges, fines, costs, and attorney fees against a condominium unit shall be paid out of the sale price or by the purchaser in preference over any other assessments or charges of whatever nature . . . .

\* \* \*

(2) . . . Unless the purchaser or grantee requests a written statement from the association of co-owners as provided in this act, at least 5 days before sale, the purchaser or grantee shall be liable for any unpaid assessments against the condominium unit together with interest, costs, fines, late charges, and attorney fees incurred in the collection thereof.

"Association of co-owners" is defined as "the person designated in the condominium documents to administer the condominium project," MCL 559.103(4), which is in this case, defendant. However, MCL 559.158 provides, in pertinent part:

If the mortgagee of a first mortgage of record or other purchaser of a condominium unit obtains title to the condominium unit as a result of foreclosure of the first mortgage, that mortgagee or purchaser and his or her successors and assigns are not liable for the assessments by the administering body chargeable to the unit that became due prior to the acquisition of title to the unit by that mortgagee or purchaser and his or her successors and assigns.

The statute does not define "successors and assigns." When a legal term of art is left undefined, it is appropriate for this Court to consult a legal dictionary. *Hunter v Sisco*, 300 Mich App 229, 239; 832 NW2d 753 (2013). *Black's Law Dictionary* (9th ed) defines "successor" as "one who replaces or follows a predecessor," and "successor in interest" as "[o]ne who follows an-

other in ownership or control of property." Further, "assign" is defined by way of "assignee" as "[o]ne to whom property rights or powers are transferred by another." *Id.*

Neither party disputes that RBS Citizens Bank acquired the sheriff's deed to the condominium as the result of a purchase pursuant to a foreclosure sale on March 1, 2011. Further, neither party disputes that Fannie Mae obtained its interest in the condominium as a result of a quitclaim deed granted by RBS Citizens Bank. Therefore, RBS Citizens Bank can properly be described as the "purchaser" and Fannie Mae can properly be described as its "successor and assign." Accordingly, pursuant to MCL 559.158, both RBS Citizens Bank and Fannie Mae were not liable for any assessments and fees that had accrued on the condominium before RBS Citizens Bank's purchase on March 1, 2011.[1]

The trial court's reliance on MCL 559.211 in ruling that Fannie Mae was liable for all of the assessments, even those incurred before March 1, 2011, was misplaced. While there is no doubt that the quitclaim deed transfer between RBS Citizens Bank and Fannie Mae was a "sale or conveyance" under MCL 559.211 and that Fannie Mae never requested a written statement from defendant regarding the amount of unpaid assessments, it is clear that the specific provisions of MCL 559.158 govern the circumstances here.

It is "well established that to discern the Legislature's intent, statutory provisions are *not* to be read in

---

[1] While it is certain that RBS Citizens Bank and Fannie Mae cannot be held liable for assessments made before March 1, 2011, we address later in this opinion whether any liability attaches for assessments made between the date of the sheriff's sale and the date the redemption period expired, September 1, 2011.

isolation; rather, context matters, and thus statutory provisions are to be read as a whole." *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). Reading the statutes as a whole, it is clear that MCL 559.158 and MCL 559.211 create a patent ambiguity and irreconcilably conflict with each other: MCL 559.158 provides that any purchaser (along with any successors or assigns) who acquires title as a result of a foreclosure sale is "not liable" for any assessments that became due before the purchaser obtained title, but MCL 559.211(2) provides that if any "purchaser or grantee" does not request a written accounting of the property's assessments, then that purchaser or grantee "shall be liable for any unpaid assessments." Thus, given the ambiguity, judicial construction is permissible. *Whitman*, 493 Mich at 312.

When confronted with two conflicting statutory provisions, specific statutory provisions prevail over more general ones. *Ter Beek v City of Wyoming*, 495 Mich 1, 22; 846 NW2d 531 (2014). It is abundantly clear that MCL 559.158 acts to eliminate all preexisting association assessments and corresponding fees and costs once a condominium is foreclosed upon, unless the original owner reclaims the property during the redemption period. The specific circumstance described in MCL 559.158 involving "foreclosure" sales prevails over the general circumstance described in MCL 559.211 involving generic "sale[s] or conveyance[s]." See *id*. Thus, because RBS Citizens Bank took title as a result of a sheriff's sale after a foreclosure, and because Fannie Mae was a successor in interest, the foreclosure acted to eliminate all preexisting association assessments. MCL 559.158. Furthermore, even though Fannie Mae did not comply with MCL 559.211(2) by requesting a written statement from defendant before it obtained title from

RBS Citizens Bank, this fact does not restore the association assessments that were eliminated by the foreclosure.

Therefore, we must determine the applicable date from which Fannie Mae is liable for any outstanding association assessments. Pursuant to MCL 559.158, if a party obtains "title" to a condominium unit as a result of foreclosure, that party is not liable for assessments "that became due prior to the *acquisition of title* to the unit." (Emphasis added.) As RBS Citizens Bank's successor, Fannie Mae is only liable for the assessments that accrued after RBS Citizens Bank acquired "title" to the condominium unit.

Fannie Mae argues that because a sheriff's deed does not vest "full title" in its holder until after the statutory redemption period passes, it is not liable for any assessments that became due before the end of the statutory redemption period, which was September 1, 2011. In support of this contention, Fannie Mae cites caselaw holding that a sheriff's deed grants the holder an equitable interest in the foreclosed property, which vests or ripens into absolute title only if the sheriff's deed is not defeated by redemption during the statutory period. See, e.g., *Gerasimos v Continental Bank*, 237 Mich 513, 519-520; 212 NW 71 (1927); *Dunitz v Woodford Apartments Co*, 236 Mich 45, 49; 209 NW 809 (1926); *Ruby & Assoc, PC v Shore Fin Servs*, 276 Mich App 110, 117-118; 741 NW2d 72 (2007), vacated in part on other grounds 480 Mich 1107 (2008). However, this argument ignores those same cases, which state that a sheriff's deed grants "equitable *title*," *Gerasimos*, 237 Mich at 520 (emphasis added); *Ruby*, 276 Mich App at 118 (emphasis added), or "an interest or *title*, equitable in character," *Dunitz*, 236 Mich at 49 (emphasis added). While there is no doubt that a sheriff's deed does not

grant absolute title, that characteristic is not dispositive. As this Court has recently held, "[MCL 559.158] does not require that the purchaser have 'absolute title,' just a 'title,' and an equitable title is a form of title." *Wells Fargo Bank v Country Place Condo Ass'n*, 304 Mich App 582, 593; 848 NW2d 425 (2014).

Therefore, on this basis, we hold that RBS Citizens Bank took title, albeit title limited by the statutory redemption period, on the date of the sheriff's sale, March 1, 2011. The statute, MCL 559.158, does not specify the type of "title" a purchaser must acquire after which assessments can accrue, and the equitable title possessed by RBS Citizens Bank as a result of the sheriff's deed and then transferred to Fannie Mae was sufficient. *Id*. Therefore, Fannie Mae properly owes all association fees and assessments from March 1, 2011, onward.[2]

### B. SLANDER OF TITLE AND UNLAWFUL RECORDING OF DOCUMENTS WITH INTENT TO HARASS OR INTIMIDATE

Fannie Mae next contends that the trial court erred by granting summary disposition in favor of defendant and dismissing its claims for common-law slander of title, statutory slander of title, and unlawful recording of documents with intent to harass or intimidate. We disagree.

To prove slander of title under the common law, a claimant "must show falsity, malice, and special dam-

---

[2] We also note that it is not unfair or inequitable to hold a purchaser or grantee in Fannie Mae's position liable for such assessments because (1) as an equitable title holder, it is benefiting from the association's governance during the redemption period (e.g., common-area maintenance) and (2) in the event that the original owner redeems the property before the expiration of the applicable period, the owner would have to reimburse the purchaser or grantee for any assessments it paid. MCL 600.3240(1) and (4).

ages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *B & B Investment Group v Gitler*, 229 Mich App 1, 8; 581 NW2d 17 (1998). "The same three elements are required in slander of title actions brought under MCL 565.108 . . . ." *Id*. The third count of plaintiff's complaint sought damages under MCL 600.2907a, which establishes a cause of action for "[a] person who violates [MCL 565.25] by encumbering property through the recording of a document without lawful cause with the intent to harass or intimidate any person . . . ."

"[T]he crucial element is malice." *Gehrke v Janowitz*, 55 Mich App 643, 648; 223 NW2d 107 (1974). A slander-of-title claimant is required to show some act of express malice by the defendant, which "implies a desire or intention to injure." *Glieberman v Fine*, 248 Mich 8, 12; 226 NW 669 (1929). "Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Stanton v Dachille*, 186 Mich App 247, 262; 463 NW2d 479 (1990). A plaintiff may not prevail on a slander-of-title claim if the defendant's "claim under the mortgage [or lien] was asserted in good faith upon probable cause or was prompted by a reasonable belief that [the defendant] had rights in the real estate in question." *Glieberman*, 248 Mich at 12.

Fannie Mae contends that the trial court erred by dismissing its claims for slander of title, both common law and statutory, and unlawful recording of a document with the intent to harass or intimidate because defendant's lien was knowingly filed in contradiction of established law. However, because we held that defendant did properly have a claim to association assess-

ments against Fannie Mae, it cannot be said that defendant "filed an *invalid lien* with the intent to cause [Fannie Mae] injury." *Stanton*, 186 Mich App at 262 (emphasis added).

Further, even if defendant did not partially prevail on its claim for association assessments, defendant's "claim under the [lien] was asserted in good faith upon probable cause or was prompted by a reasonable belief that [it] had rights in the real estate in question." *Glieberman*, 248 Mich at 12. Fannie Mae has cited, and this Court has found, no caselaw of either this Court of our Supreme Court that is directly contrary to the position that defendant took at trial regarding the lien, a fact that cuts against a finding of malice.

Additionally, Fannie Mae's counsel attached to its motion for summary disposition a list of decisions from both the Wayne and the Oakland Circuit Courts that counsel characterized as either "favorable decisions" or "unfavorable decisions." By Fannie Mae's own assertion, this issue has led to some disagreement between judges in the circuit courts. Even based on Fannie Mae's proffered "unfavorable decisions," defendant could have asserted its claim "in good faith upon probable cause." *Id*.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. No costs, as neither party has prevailed in full. MCR 7.219.

RIORDAN, P.J., and FORT HOOD, J., concurred with DONOFRIO, J.