# STATE OF MICHIGAN

# COURT OF APPEALS

GAIL A. ANDERSON,

      Plaintiff-Appellee,

v

SEARS ROEBUCK AND COMPANY,

      Defendant-Appellant.

UNPUBLISHED
January 27, 2015

No. 318532
Genesee Circuit Court
LC No. 12-098914-NO

Before: MURRAY, P.J., and SAAD and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by leave granted on remand from the Michigan Supreme Court[1] an opinion and order denying its motion for summary disposition in this premises liability action. We reverse and remand for entry of an order granting defendant's motion for summary disposition.

This case arises from an incident in which plaintiff fell after stepping on a curb at the edge of a large portion of deteriorated curb of a median in the parking lot of defendant's store. Defendant argues that the trial court erred in denying its motion for summary disposition because the deteriorated curb was open and obvious, and there were no special aspects of the deteriorated curb that rendered it unreasonably dangerous.

Defendant moved for summary disposition under MCR 2.116(C)(10). This Court reviews a trial court's decision on a motion for summary disposition de novo. *Fed Nat'l Mtg Ass'n v Lagoons Forest Condo Ass'n*, 305 Mich App 258, 263; 852 NW2d 217 (2014) (citation omitted). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). The trial court reviews the evidence, including pleadings and admissions, in a light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Id.* "A genuine issue of material fact exists when, after viewing the evidence in

---

[1] See *Anderson v Sears Roebuck and Co*, 496 Mich 854; 847 NW2d 244 (2014).

the light most favorable to the nonmoving party, the record leaves open an issue upon which reasonable minds may differ." *Id*. at 263-264.[2]

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013) (citation and quotation marks omitted). The parties do not dispute the fact that plaintiff was an invitee on defendant's premises. "[A] premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 477-478; 760 NW2d 287 (2008) (citations and quotation marks omitted). A premises possessor breaches its duty if a dangerous condition exists on the land and the premises possessor "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012).

The duty to protect an invitee from an unreasonable risk of a dangerous condition does not exist if the dangerous condition is so obvious that the invitee should reasonably be expected to discover the condition. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). "A condition is open and obvious if an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Bialick v Megan Mary, Inc*, 286 Mich App 359, 363; 780 NW2d 599 (2009) (citation and quotation marks omitted, alteration in original). Thus, the test for whether a dangerous condition is open and obvious is an objective one. See *id*.

In *Lugo*, the plaintiff fell after tripping over a pothole on the defendant's premises. *Lugo*, 464 Mich at 514. There was nothing that would have prevented the plaintiff from noticing the pothole. *Id*. at 514-515. The Michigan Supreme Court held that the dangerous condition was open and obvious because the dangerous condition was an ordinary pothole in a parking lot. *Id*. at 520-521. Although the plaintiff argued that the moving cars in the parking lot were a distraction, the Michigan Supreme Court held that there was nothing "usual" about cars travelling in a parking lot that would preclude application of the open and obvious doctrine. *Id*. at 522.

The deteriorated curb on the median in defendant's parking lot was open and obvious because an average user of the parking lot with ordinary intelligence would have discovered, upon casual inspection, the danger of walking on the edge of the deteriorated portion of the curb. Plaintiff explained in her deposition that she stepped on the edge of the deteriorating portion of the curb:

---

[2] Curiously, defendant cites to vintage cases—circa 1982 and before—to argue what the appropriate summary disposition standards are under the 1985 court rules. The standard set forth in cases like *Durant v Stahlin*, 375 Mich 628; 135 NW2d 407 (1965), that the court must be satisfied that it would be impossible for the claim asserted to be supported at trial, is no longer good law. *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999).

*Q.* So actually your foot, your left foot did not immediately go into the hole that we see in Exhibit G or the photograph that is going to be Exhibit E?

*A.* My foot was on -- the hole is there. My foot, my one foot was on one side. And my other foot was on the side of it. So if you want to say -- I'm not sure how to answer that.

*Q.* Is your testimony -- just maybe I'm confused. Maybe I'm asking bad questions. But your right foot is on the curb? You're [sic] left foot goes on top of the median? Is your testimony then --

*A.* No. My right foot goes on top of it. You step up on the curb. And then when I put my left foot down that broken area was there.

*Q.* Okay.

*A.* And then I went into the street.

*Q.* The broken area, is that where your foot landed though?

*A.* It didn't land, it landed -- well, I don't know. The broken area is here. *It landed right next to it or near it.*

*Q.* Okay.

*A.* And, you know, not in the center of it. *On the edge of it.*

*Q.* Is there a particular reason why you didn't notice the broken area prior to the incident?

*A.* Where I was coming from you can't see it.

*Q.* How tall are you?

*A.* 5'2.

*Q.* Is your testimony when you stepped up on that curb you couldn't see the broken area?

*A.* I didn't notice the, I didn't notice like the whole area. No, I didn't notice the whole area. My foot wasn't near that. *My foot was on the edge of it.* [Emphasis added.]

It is not clear whether plaintiff's fall caused additional deterioration in the curb. However, a photograph plaintiff marked during her deposition shows that plaintiff placed her left foot directly on the edge of the hole in the curb. The photograph also depicts a hole in the curb of the median in the parking lot, which is clearly visible. The curb surrounding the median was painted yellow, which plaintiff admitted indicates caution. A reasonable person would have observed the yellow curb and the deteriorating condition of the curb, and would have known that stepping on the edge of deteriorating concrete in a curb could lead to further weakening of the curb. See

*Lugo*, 464 Mich at 520-521. Even if plaintiff believed that the portion of the curb on the edge of the hole was harmless, a reasonable person would have been on notice that the area was weak and could crumble. See *id*. And, even if plaintiff stepped solely on the edge of the curb and not onto the edge of the curb immediately adjacent to the hole in the concrete, the dangerous condition of the edge of the hole in the curb was open and obvious.

Plaintiff argues that the deteriorating condition of the edge of the hole in the curb was latent because underground water flow weakened the concrete near the hole in the curb, as testified to by James Standen, a professional engineer and plaintiff's expert witness. According to Standen, the water underneath the curb continuously freezes over and thaws, which causes the concrete to weaken. However, the deteriorating condition of the curb—reflected by the hole in the concrete of the curb—was clearly visible, and a reasonable person would have realized that stepping on the edge of the deteriorated portion of the curb could lead to further weakening and crumbling. See *Lugo*, 464 Mich at 520-521.[3]

For the reasons stated above, the trial court erred in denying defendant's motion for summary disposition.

Reversed and remanded for entry of an order granting defendant's motion for summary disposition.

Defendant may tax costs, having prevailed in full. MCR 7.219(A). We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Kirsten Frank Kelly

---

[3] Plaintiff does not argue on appeal, and did not argue at the trial court level, that there was a special aspect of the condition that would preclude application of the open and obvious doctrine. See *Millikin v Walton Manor Mobile Home Park, Inc*, 234 Mich App 490, 499; 595 NW2d 152 (1999). Regardless, there were no special aspects of the open and obvious hazardous condition that rendered the risk unreasonable. First, the condition was not effectively unavoidable. *Lugo*, 464 Mich at 518. There is no indication that the deteriorated portion of the concrete was inescapable. Although plaintiff testified that she stepped on the curb to move out of the way of traffic in the parking lot, plaintiff did not testify that she had no choice but to step on the edge of the deteriorated portion of the curb to get out of the way of traffic. Furthermore, plaintiff testified that she did not walk over the deteriorated median curb on her initial walk to defendant's store or on her way back to her car. Thus, plaintiff fails to establish that the curb was effectively unavoidable. See *id*. Second, the deteriorating curb of the median in the parking lot over which plaintiff tripped is more akin to an "ordinary pothole" than a 30-foot-deep pit. See *id*. The curb on the median was only a few inches off the ground, which indicates that it would not create an unreasonably high risk of severe harm. *Id*. at 518-519.