# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN DECKROW, SUZANNE DECKROW, ROBERT KNIGHT, and MARJORIE KNIGHT,

UNPUBLISHED
March 22, 2016

Plaintiffs/Counter Defendants-
Appellants/Cross Appellees,

v

No. 323160
Sanilac Circuit Court
LC No. 13-035093-CZ

JOHN BEZEMEK, NANCY BEZEMEK, and JASON BEZEMEK,

Defendants/Counter Plaintiffs-
Appellees/Cross Appellants.

Before: SERVITTO, P.J., and SAAD and O'BRIEN, JJ.

PER CURIAM.

This case arises from a dispute regarding the validity of an easement. Plaintiffs appeal the judgment in defendants' favor that includes an award for lost tree sales. Defendants cross-appeal the dismissal of their slander of title claim. For the reasons provided below, we affirm.

## I. BASIC FACTS

This case involves three different pieces of property, which for practical matters sit side-by-side in an east-west configuration. We will refer to the west-most property as "parcel 1," the middle property as "parcel 2," and the east-most property as "parcel 3." The access to and from these parcels and the main road is via Covered Bridge Road, which in turn is only accessible through the property represented by parcel 3. Hence, to access parcel 1 from the main road, one must travel across parcels 2 and 3; to access parcel 2, one must travel across parcel 3.

In 1978, plaintiff Robert Knight acquired 40 acres of land, which included, *inter alia*, these three "parcels." Knight subsequently sold what we are considering parcels 1 and 2.[1] The conveyance included an express easement over parcel 3 in order to access Covered Bridge Road. The language of the deed contained no restrictions or limitations on this easement.

---

[1] The property was not technically subdivided into parcels 1 and 2 yet.

-1-

Defendants John and Nancy Bezemek acquired parcels 1 and 2 in 1998.[2] In 2000, the Bezemeks subdivided their land and sold parcel 2 to plaintiffs John and Suzanne Deckrow. In the 2000 conveyance, the Bezemeks also attempted to retain an easement *for themselves* over parcel 2, which they would utilize to access their parcel 1 from the main road. But the deed actually stated that the Bezemeks were *granting the easement over parcel 2 to the Deckrows*. As a result, the creation of the easement was ineffectual because the Deckrows did not need (and could not have) an easement over their own land. See *Rusk v Grande*, 332 Mich 665, 670; 52 NW2d 548 (1952). In 2001, to correct this mistake, the Bezemeks and the Deckrows entered into a new easement agreement, which provided that the Deckrows were providing an easement over parcel 2 *to the Bezemeks*. This deed stated that the easement over parcel 2 was for "providing access and utilities."

John Bezemek testified that Robert Knight was upset that the property sale to the Deckrows occurred without Knight's involvement (evidently, Knight was a real estate agent of some sort) and thereafter Knight took the position that the Bezemeks did not have an easement over his property, i.e., parcel 3. In 2002, Knight recorded an affidavit explaining that he did not intend for the easement over parcel 3 to continue to provide access over his property in the event that the land he initially sold (parcels 1 and 2) was subdivided. Thus, it was Knight's position that when the Bezemeks partitioned off and sold parcel 2 to the Deckrows, they lost their easement across Knight's property, parcel 3.[3]

Eventually, plaintiffs began taking steps to restrict defendants' use of the easement. Plaintiffs admitted that they installed a gate on the Knight property for that purpose, and defendants asserted that John Deckrow placed stumps to block the path of the road they had constructed pursuant to their easement and rerouted the driveway off of the easement.

John Bezemek testified that he brought a forester to his property for the purpose of harvesting ash trees on his property. Bezemek said that he informed the forester of the issues he was having with plaintiffs, and consequently, the forester declined to pursue harvesting the trees. Bezemek estimated that an ash tree was worth $10 and that he would have harvested at least 1,000 trees.

Plaintiffs brought suit in 2013 and alleged trespass and violation of the easement's terms. Plaintiffs' position was that any easement the Bezemeks had in place, ended at the east property line of parcel 2 and did not extend into the Knight property, parcel 3. Defendants filed a counter-complaint and claimed interference with the easement and slander of title. Defendants' alleged damages included the lost tree sales.

---

[2] Again, the property was not subdivided at this point.

[3] Although not particularly relevant for the issues on appeal, Knight and the Deckrows entered into an agreement where Knight granted a new easement over parcel 3 to the Deckrows.

The trial court found that the Bezemeks had a valid easement that extended over parcel 3.[4] Accordingly, the court dismissed plaintiffs' claims. As for defendants' counter claims, the court found that plaintiffs interfered with defendants' easement and enjoined them from doing so in the future. The court further awarded defendants $1,000 for road repair and $10,000 for lost timber sales. The court dismissed defendants' slander of title claim because it found that while the affidavit that Knight recorded "would raise up all kinds of red flags" to a title examiner, defendants had not proven damages by a preponderance of the evidence. Finally, the court declined to sanction plaintiffs pursuant to MCR 2.114(F) for bringing a frivolous claim because it found that the claims were based on a good-faith belief regarding their property rights.

## II. PLAINTIFFS' APPEAL

Plaintiffs argue that the trial court erred in awarding $10,000 in lost sales to defendants. We disagree.

Following a bench trial, we review a trial court's findings of fact for clear error and review de novo its conclusions of law. *Ligon v City of Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). We also review a damages award for clear error. *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 177; 530 NW2d 772 (1995). "The clear error standard provides that factual findings are clearly erroneous where there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake." *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007).

Plaintiffs claim that awarding damages for the lost tree sales was erroneous because to allow "commercial timbering" would permit activity that is beyond the scope of the easement. However, plaintiffs first raised this argument in their motion for reconsideration at the trial court. "Where an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Therefore, we could decline to address it. Regardless, plaintiffs' claim is without merit.

Notably, plaintiffs on appeal do not contest the validity of any of defendants' easements over parcel 2 or parcel 3.[5] Instead, their argument is focused on whether allowing the easement to be used for transporting harvested timber is permissible. "The owner of an easement cannot materially increase the burden of the easement or impose a new and additional burden on the servient estate." *Heydon v MediaOne*, 275 Mich App 267, 275; 739 NW2d 373 (2007). It is clear that defendants' easement over parcel 3 was created when Knight first conveyed parcels 1

---

[4] There was no dispute at trial that the Bezemeks had a valid easement over parcel 2, the Deckrows' property. Indeed, the court openly questioned why the Deckrows were involved in the suit in the first place, as the real dispute was about the Bezemeks' easement over Knight's property.

[5] Plaintiffs concede in their reply brief on appeal that "[t]he issue before the court is not the existence of an easement appurtenant but the nature of that easement."

and 2 in 1978. Parcel 1 and parcel 2's easement over parcel 3 ran with the land, which ultimately led to the Bezemeks and the Deckrows, as the last successors for parcels 1 and 2. The 1978 deed that created the easement over parcel 3 did not place any limitations or restrictions on the use of the easement.[6] Therefore, plaintiffs' assertion on appeal that the "explicit scope of [the] easement is for driveway and utility access" is without merit.[7]

Plaintiffs also claim that because the Bezemeks had access through another neighbor's property, any interference by plaintiffs could not have caused any damages for lost timber sales because the trees could have been transported out through this other access point. But John Bezemek testified that he and this other neighbor "had a very specific understanding" that this other means of access was limited to "family use," which meant that using that path for moving trees and any equipment was not permitted. With this testimony, we cannot conclude that the trial court clearly erred in finding that the plaintiffs' interference of the easement was the cause of defendants' inability to make the timber sales. In short, there is nothing in the record to support plaintiffs' claim that the timber could have been harvested through another avenue.

Plaintiffs also argue that the trial court erred in awarding the $10,000 in lost tree sales because there was no evidence to support the conclusion that they tortuously interfered with a business relationship. Plaintiffs' position is specious. Defendants never alleged this particular tort, nor did the trial court award damages based on this tort.[8] Instead, defendants sought

---

[6] Knight's attempt to file an affidavit in 2002, which purported to place limitations on the easement over parcel 3 by "clarifying" his intent in 1978, is not permissible because "[o]nce granted, an easement cannot be modified by either party unilaterally." *Schadewald v Brule*, 225 Mich App 26, 36; 570 NW2d 788 (1997), citing *Douglas v Jordan*, 232 Mich 283, 287; 205 NW 52 (1925) and *Tittiger v Johnson*, 103 Mich App 437, 443; 303 NW2d 26 (1981). Moreover, there was no assertion that the 1978 deed was ambiguous, so no extrinsic evidence, such as Knight's affidavit, can be used to ascertain the original intent of the parties. See *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010).

[7] Plaintiffs rely on the easement agreement between the Deckrows and the Bezemeks, which provided the Bezemeks with access over the Deckrows' parcel 2. But this does not address the easement in question over Knight's parcel 3. Moreover, the Deckrow/Bezemek agreement simply provides that the easement over parcel 2 is "for purposes of providing access and utilities." The term "access" is not limited in the deed; therefore, it cannot be a basis for precluding the Bezemeks from "accessing" their land to harvest and remove trees. We further note that plaintiffs' claim that "15,000-20,000 lb trucks, bulldozers, grappler, delimber, and any other commercial logging equipment" would be used is not found anywhere in the record.

[8] "The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 90; 706 NW2d 843 (2008). Additionally, the plaintiff must prove

damages for the interference with their valid easement, and the court awarded such damages.  It is understood that for the interference of an easement, the owner of the easement "may proceed by an action or damages, injunctive relief, or both."  25 Michigan Law & Practice 2d, Real Property, § 117, p 139; see also *Choals v Plummer*, 353 Mich 64, 73; 90 NW2d 851 (1958); 2 Restatement Property, 3d, Servitudes, § 8.3, pp 492-493.  Plaintiffs do not offer any argument or cite any authority that demonstrates that the recovery of such damages must fall under a tortious interference of a business relationship theory instead of general damages to an interference of an easement theory.  Accordingly, plaintiffs have completely failed to show how they should prevail on this issue.

### III. DEFENDANTS' CROSS-APPEAL

Defendants maintain that the trial court erred by dismissing their slander of title claim. We disagree.

"Claims for slander of title were recognized at common law as a remedy for malicious publication of false statements that disparage a plaintiff's right in property." *Anton, Sowerby & Assoc, Inc v Mr C's Lake Orion, LLC*, 309 Mich App 535, 546; 872 NW2d 699 (2015) (quotation marks and citation omitted).  "In Michigan, slander of title claims have both a common-law and statutory basis." *B & B Inv Group v Gitler*, 229 Mich App 1, 8; 581 NW2d 17 (1998).  "To prove slander of title under the common law, a claimant must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *Federal Nat'l Mtg Ass'n v Lagoons Forest Condo Ass'n*, 305 Mich App 258, 269-270; 852 NW2d 217 (2014) (quotation marks and citation omitted).  A plaintiff must prove the same common law elements for a slander of title claim brought under MCL 565.108.[9] *Id*. at 270.

Here, the court dismissed this count because it found that defendants had not suffered any damages.  On appeal, defendants assert that they did suffer damages because the court noted that the affidavit would "raise up all kinds of red flags" with a title examiner."  But the trial court continued,

---

that the "intentional interference" was accomplished through a per se wrongful act or the doing of an unlawful act with malice and unjustified in the law for purposes of invading plaintiff's business relationship with another. *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002).

[9] MCL 565.108 provides:

> No person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land, and in any action brought for the purpose of quieting title to land, if the court shall find that any person has filed a claim for that reason only, he shall award the plaintiff all the costs of such action, including such attorney fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting such claim shall pay to plaintiff all damages that plaintiff may have sustained as the result of such notice of claim having been so filed for record.

[The affidavit] *may, in the future*, interfere with title to the property. With slander of title, you still have to show some loss or damages. If he had been prohibited from a sale of the property, it could be different, but I don't have any record—anything in this record saying that the slander of title has damaged him in any way. [Emphasis added.]

The trial court did not clearly err because "[r]emote, contingent, or speculative damages cannot be recovered in Michigan . . . ." *4041-49 W Maple Condo Ass'n v Countrywide Home Loans, Inc*, 282 Mich App 452, 460; 768 NW2d 88 (2009). With there being no evidence that defendants attempted to transfer property and encountered difficulties due to the affidavit, any reliance on a potential "red flag" in the remote future is misplaced, as it is too speculative to be recoverable.

Affirmed. No taxable costs, as no party prevailed in full. MCR 7.219.

/s/ Henry William Saad
/s/ Colleen A. O'Brien