*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RUBEN S. RAMOS,

        Plaintiff/Counterdefendant-
        Appellee/Cross-Appellant,

v

BIBI INC., doing business as BLACK JACK
ASPHALT,

        Defendant/Counterplaintiff/Third-
        Party Plaintiff-Appellant/Cross-
        Appellee,

and

LYNN WILKINSON and JANINE WILKINSON,

        Third-Party Defendants.

UNPUBLISHED
July 23, 2020

No. 347751
Bay Circuit Court
LC No. 18-003238-CH

Before: FORT HOOD, P.J., and JANSEN and TUKEL, JJ.

PER CURIAM.

Defendant, Bibi, Inc., doing business as Black Jack Asphalt, appeals as of right the trial court's opinion and order granting summary disposition in favor of plaintiff, Ruben S. Ramos, on defendant's counterclaim for foreclosure on a construction lien and unjust enrichment. Plaintiff cross-appeals, challenging the grant of summary disposition to defendant on plaintiff's claim of slander of title. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case involves real property located in Bay City, Michigan. On April 4, 2017, plaintiff entered into a land contract for the sale of the property to Lynn and Janine Wilkinson. The land contract required the Wilkinsons to make a down payment of $15,000 and to pay the balance plus

-1-

interest in monthly installments. At the closing on April 4, 2017, the Wilkinsons presented plaintiff with a check signed by Lynn in the amount of $15,000. Plaintiff's bank dishonored the check because it was drawn on a closed account. On June 21, 2017, plaintiff was granted a judgment of possession with an apparent 90-day redemption period.

On July 10, 2017, defendant entered into a contract with the Wilkinsons to install a driveway on the property for $11,450. According to defendant, he finished installing the driveway on August 1, 2017 and the Wilkinsons gave him a check signed by Lynn in the amount of $11,450. That check was also dishonored because it was drawn on a closed account.

Plaintiff initiated summary proceedings in the district court, and the district court entered an order of eviction against the Wilkinsons on September 25, 2017. On October 16, 2017, defendant filed an $11,450 claim of lien against the property pursuant to the Construction Lien Act (CLA), MCL 570.1101 *et seq.*, on October 16, 2017. Plaintiff's counsel sent defendant's counsel a letter in February 2018, and another in April 2018, requesting that defendant discharge the lien, arguing that the Wilkinsons did not have an interest in the property at the time defendant filed the claim of lien. Defendant's counsel did not respond to the first letter but responded to the second letter by stating that defendant would not discharge the lien.

On or about April 19, 2018, plaintiff filed this action for slander of title and obtained a temporary restraining order preventing defendant from removing the driveway. On May 29, 2018, defendant filed a counterclaim seeking foreclosure on the basis of the construction lien and for unjust enrichment. Plaintiff filed a motion for summary judgment of defendant's counterclaims under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted) and (C)(10) (no genuine issue of material fact). Defendant opposed that motion and filed its own motion for summary disposition of plaintiff's slander of title claim under MCR 2.116(I)(2) (opposing party entitled to judgment). The trial court granted summary disposition in favor of defendant with respect to plaintiff's slander of title claim. It granted summary disposition in favor of plaintiff with respect to defendant's counterclaims for foreclosure of a construction lien and unjust enrichment. These cross-appeals followed.

## II. STANDARD OF REVIEW

We review a trial court's decision to grant summary disposition de novo. *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 11; 930 NW2d 393 (2018). Moreover, "[q]uestions regarding the interpretation and application of statutes, including the Construction Lien Act, are reviewed de novo on appeal." *Stock Bldg Supply, LLC v Parsley Homes of Mazuchet Harbor, LLC*, 291 Mich App 403, 406; 804 NW2d 898 (2011).

Summary disposition under MCR 2.116(C)(8) is appropriate where, "[t]he opposing party has failed to state a claim on which relief can be granted." A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). All factual allegations in support of the claim are accepted as true and are construed in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

Summary disposition under MCR 2.116(C)(10) is appropriate where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." In reviewing the motion, we consider the "pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Under MCR 2.116(I)(2), "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

### III. FORECLOSURE OF THE CONSTRUCTION LIEN

Defendant first argues in its appeal that the trial court erred by dismissing its counterclaim for foreclosure of the construction lien. We conclude that summary disposition was the appropriate result, but disagree with the trial court's reasoning.[1]

The CLA governs construction liens in Michigan. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 549; 886 NW2d 113 (2016). "It has long been recognized that construction lien laws serve two purposes: to protect the right of lien claimants to payment for wages or materials and to protect owners from paying twice for such services." *Jeddo Drywall, Inc v Cambridge Investment Group, Inc*, 293 Mich App 446, 452; 810 NW2d 633 (2011) (quotation marks and citation omitted). The CLA is remedial in nature and should be "construed liberally to 'secure the beneficial results, intents, and purposes of this act.' " *Solution Source, Inc v LPR Assoc Ltd Partnership*, 252 Mich App 368, 373; 652 NW2d 474 (2002), quoting MCL 570.1302(1).MCL 570.1114 provides that "[a] contractor does not have a right to a construction lien on the interest of an owner or lessee in a residential structure unless the contractor has provided an improvement to the residential structure under a written contract between the owner or lessee and the contractor and any amendments or additions to the contract are also in writing." A "contractor" is "a person who, pursuant to a contract with *the owner* or lessee of real property, provides an improvement to real property." MCL 570.1103(5) (emphasis added). An "owner" is "a person holding a fee interest in real property or an equitable interest arising out of a land contract."[2] MCL 570.1105(3).

The trial court concluded that defendant was never a "contractor" under the CLA: a "contractor" is one who contracts with an "owner", and the Wilkinsons were not "owners" because their $15,000 check drawn on a closed account constituted fraud in the inducement, rendering the

---

[1] "[A]n appellate court may uphold a lower tribunal's decision that reached the correct result, even if for an incorrect reason." *Klooster v City of Charlevoix*, 488 Mich 289, 310; 795 NW2d 578 (2011).

[2] There has been no argument that the Wilkinsons were "lessees" in the property."

land contract a nullity. Thus, the trial court concluded, the construction lien on the property was void. Defendant challenges the trial court's finding that there was fraud in the inducement, arguing that the Wilkinsons' future promise to pay could not form the basis of a fraud claim.

Actionable common law fraud requires "a false statement relating to a past or existing fact; promises regarding the future are contractual and will not support a claim of fraud." *Cummins v Robinson Twp*, 283 Mich App 677, 696; 770 NW2d 421 (2009). Comparatively, fraud in the inducement "occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). Here, the trial court relied on the concept of fraud in the inducement, not actionable common law fraud.

The trial court went on to conclude that: "A forged deed is a nullity and has no force or effect for either the grantee or any purchaser from the grantee." A person who acquires property through a forged deed is not a bona fide purchaser for value. See *Special Property VI LLC v Woodruff*, 273 Mich App 586, 591; 730 NW2d 753 (2007). A forged deed is not merely voidable, but void. See *Fletcher v Dutton*, 265 Mich 231, 233; 251 NW 332 (1933) ("The mortgage to the loan association rests on a deed which is in effect a forgery, and at any rate is null and void."). The trial court therefore concluded that the land contract was void. However, the trial court's reasoning was flawed because this case does not involve a forged deed. "[F]raud in the inducement does not render a contract void, but merely *voidable* at the election of the defrauded party." *Hubbell, Roth & Clark, Inc v Jay Dee Contractors, Inc*, 249 Mich App 288, 294; 642 NW2d 700 (2001) (emphasis added). Therefore, the trial court erred by concluding that the no-account check rendered the contract void: the land contract was "merely voidable." *Id*.

Nevertheless, defendant was not entitled to summary disposition where, contrary to defendant's position, the Wilkinsons failed to obtain equitable title to the property in question. Where defendant contracted with a party who was neither an owner or a lessee of the property, or otherwise had no equitable title to the property, defendant was not entitled to a construction lien under the CLA.

MCL 570.1107(3) provides:

> Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property to which the person contracting for the improvement had no legal title has a construction lien upon the improvement for which the contractor, subcontractor, supplier, or laborer provided labor, material, or equipment. The forfeiture, surrender, or termination of any title or interest held by an owner or lessee who contracted for an improvement to the property, an owner who subordinated his or her interest to the mortgage for the improvement, or an owner who has required the improvement does not defeat the lien of the contractor, subcontractor, supplier, or laborer upon the improvement.

In other words, "the lien is not *destroyed* when the entity with whom the lienholder contracted loses title to the relevant property." *Stocker v Tri-Mount/Bay Harbor Bldg Co, Inc*, 268 Mich App 194, 199; 706 NW2d 878 (2005). Stated another way, "the CLA makes it clear that a change in

ownership does not alter the validity of a lien, MCL 570.1107(3) . . . ." *Jeddo Drywall, Inc*, 293 Mich App at 457.

The fatal flaw in defendant's claim is that it cannot establish that it was a "contractor" who was entitled to a lien under MCL 570.1107(3). A "contractor" is "a person who, pursuant to a contract with the owner or lessee of real property, provides an improvement to real property." MCL 570.1103(5). An "owner" is "a person holding a fee interest in real property or an equitable interest arising out of a land contract." MCL 570.1105(3). Here, the Wilkinsons were not "owners" of the property, nor did they ever obtain any equitable interest from the land contract. Our Supreme Court has explained that "under a land contract, although the vendor retains legal title until the contractual obligations have been fulfilled, the vendee is given equitable title, and that equitable title is a present interest in realty that may be sold, devised, or encumbered." *Graves v American Acceptance Mtg Corp (On Rehearing)*, 469 Mich 608, 614; 677 NW2d 829 (2004). Therefore, "[w]here the purchaser pays *part* of the purchase price and takes possession, the purchaser acquires an equitable title, and the vendor is a trustee of the legal title for the purchaser *to the extent of the payment*." *Steward v Panek*, 251 Mich App 546, 556; 652 NW2d 232 (2002) (emphasis added). Although, Lynn wrote a check for $15,000, it was returned because it was drawn on a closed account. Thus, the Wilkinsons "never paid any money for the purchase of [the] property." Because they did not pay "part of the purchase price," they never acquired equitable title, *Steward*, 251 Mich App at 556, and never owned of the property. MCL 570.1105(3). Accordingly, defendant was not a contractor under the CLA, and was not entitled to a construction lien. MCL 570.1103(5); MCL 570.1107(3).

## IV. UNJUST ENRICHMENT

Defendant next argues that the trial court erred by dismissing its counterclaim for unjust enrichment. Again, we disagree.

"A contract will be implied in law to prevent unjust enrichment." *AFT Mich v Michigan*, 303 Mich App 651, 660; 846 NW2d 583 (2014). "An implied-in-law contract is a legal fiction to enable justice be accomplished even if there was no meeting of the minds and no contract was intended." *Id.* (quotation marks and citation omitted). "A claim of unjust enrichment requires the complaining party to establish (1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22-23; 831 NW2d 897 (2012). However,

> [a] third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the party benefited has not requested the benefit or misled the other parties. . . . Otherwise stated, the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person. [*Karaus*, 300 Mich App at 24, quoting *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 196; 729 NW2d 898 (2006), lv den 480 Mich 928

(2007), quoting 66 Am Jur 2d, Restitution and Implied Contracts, § 30[3] (ellipsis in *Morris Pumps*).]

Moreover, a court may not imply a contract "if the parties have an express contract covering the same subject matter." *ATF Mich*, 303 Mich App at 661.

The trial court in this case concluded that plaintiff "was not unjustly enriched by defendant's improvement to the driveway because [plaintiff] did not request the improvement or mislead other parties regarding the improvement." In *Karaus*, this Court emphasized that Mellon Bank received interest in the property as a third party and that there was no evidence that Mellon Bank requested the work performed by the plaintiff or misled the plaintiff to receive the benefit. *Karaus*, 300 Mich App at 23-24. Similarly, in this case, plaintiff attested that he did not learn of the asphalt contract until after the claim of lien was filed. There was no evidence here that plaintiff requested defendant install the driveway or that plaintiff misled defendant so that he could receive the benefit of the driveway. Moreover, a contract could not be implied because there was an express contract between defendant and the Wilkinsons for the installation of the driveway. While defendant was deprived of the money it was due for fulfilling its obligation to install the driveway, the duty to pay lies solely with the Wilkinsons, not plaintiff.

## V. SLANDER OF TITLE

In his cross-appeal, plaintiff argues that the trial court erred by dismissing his slander of title claim. We agree.

"In Michigan, slander of title claims have both a common-law and statutory basis." *Anton, Sowerby & Assoc, Inc v Mr C'S Lake Orion, LLC*, 309 Mich App 535, 546; 872 NW2d 699 (2015) (quotation marks and citation omitted). MCL 565.108 provides that "[n]o person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land . . . ." Under the common law or MCL 565.108, a claimant must show three elements: (1) falsity; (2) malice; and (3) "special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *Fed Nat Mortg Ass'n v Lagoons Forest Condo Ass'n*, 305 Mich App 258, 269-270; 852 NW2d 217 (2014). Special damages include litigation costs, including attorney fees, and impairment of vendibility. *B & B Investment Group v Gitler*, 229 Mich App 1, 9, 13; 581 NW2d 17 (1998).

Here, defendant filed the claim of lien relying on the false representation that the Wilkinsons owned the property at issue. Additionally, plaintiff asserted that he was entitled to attorney fees and that the lien prevented him from selling the property. Thus, the first and third elements are not at issue. With respect to the second element, malice, we have explained:

The crucial element is malice. A slander of title claimant must show some act of express malice, which implies a desire or intention to injure. Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that

---

[3] We note *Karaus* erroneously cites to § 32 of 66 Am Jur 2d, Restitution and Implied Contracts and that the text is found in § 30. See 66 Am Jur 2d, Restitution and Implied Contracts, § 30.

the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury. A plaintiff may not maintain a slander of title claim if the defendant's claim under the mortgage or lien was asserted in good faith upon probable cause or was prompted by a reasonable belief that the defendant had rights in the real estate in question. . . . [*Wells Fargo Bank v Country Place Condo Ass'n*, 304 Mich App 582, 596; 848 NW2d 425 (2014) (citations, quotation marks, and alterations omitted).]

In this case, the trial court found that plaintiff had failed to allege actual malice. We cannot reach the same conclusion. Plaintiff emphasized that defendant filed the claim of lien after the Wilkinsons no longer had an interest in the property. Furthermore, plaintiff alleged that defendant "intentionally perpetrated and maintained a false claim" on plaintiff's title and "wrongfully and maliciously" refused to remove the lien "in violation of common law title slander." We conclude that these allegations were sufficient to establish plaintiff's prima facie case.

Additionally, the conduct that triggers a claim for slander of title is not the filing of a notice, but the privilege of filing notices. See MCL 565.108. In *Anton, Sowerby & Assoc, Inc*, 309 Mich App at 548-550, we concluded that the plaintiff's failure to release a previously-valid lien and the plaintiff's continued pursuit of a lawsuit to enforce that lien contributed to a slander of title claim. Here, in plaintiff's complaint, he not only emphasized that defendant's lien was never valid, but he also emphasized that defendant refused to discharge the lien after sending two letters to defendant's counsel. On the basis of the foregoing, we conclude the trial court erred by dismissing plaintiff's slander of title claim.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Jonathan Tukel